## In re ROWE.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1896.)

### No. 846.

**1.** EXTRADITION—TRIAL FOR DIFFERENT OFFENSE—EMBEZZLEMENT.

One R. was extradited from Mexico, upon an information charging that he had counseled and advised another to commit the crime of embezzlement of public moneys, and upon affidavits tending to prove the facts alleged, which were found by the Mexican authorities to show the commission of the crime, and that there were suspicions that R. was an accomplice in its commission sufficient to justify his arrest and trial. After his return to the state of Iowa, from which he had fled, R. was indicted for embezzlement, as a principal; the statute of the state (McClain's Ann. Code, § 5699) having abrogated the distinction between principals and accessories, and making all concerned in the commission of a crime alike principals. Being held for trial under this indictment, R. applied for his discharge on habeas corpus. *Held*, that he was not held for trial for an offense different from that for which he was extradited.

**2.** SAME—DEFECTIVE INDICTMENT—NEW INDICTMENT.

The existence of a technical defect in an information or indictment does not make it no information or indictment at all; nor does the finding of a new indictment, to remedy a technical defect in a former one, charge another or different offense, so as, in either case, to prevent the trial, on a good indictment, of a defendant who has been extradited from a foreign country on the defective one.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Chester W. Rowe was treasurer of Poweshiek county, Iowa, and embezzled a large amount of the public moneys, and fled the state in company with his brother, Richard R. Rowe, the appellant. Thereupon the following information was filed before H. F. Morton, a justice of the peace of the county:

"State of Iowa, Poweshiek County—ss.

"In Justice Court, before H. F. Morton, J. P.

"The State of Iowa vs. Richard Rowe. Information.

"The defendant is accused of the crime of embezzlement, for that, on the 20th day of April, 1895, in the township of Jackson, county and state aforesaid, one Chester W. Rowe was treasurer of Poweshiek county, Iowa, and a public officer, and, as such county treasurer and public officer, was then and there charged with the collection, safe-keeping, and disbursement of the public money; and that the said Chester W. Rowe, as such county treasurer and public officer, did then and there have in his possession and under his control, for safe-keeping and disbursement, public money amounting to and of the value of thirty thousand dollars, which said money was received by said Chester W. Rowe, and came into his hands, and under his control, as such public officer and county treasurer;

and that the said Chester W. Rowe did then and there willfully, unlawfully, fraudulently, and feloniously embezzle and convert to his own use the sum of thirty thousand dollars of the public money received by him, the said Chester W. Rowe, as such county treasurer and public officer as aforesaid, which said money was then and there of the amount and value of thirty thousand dollars, and belonged to and was the property of Poweshiek county, Iowa; and that the said defendant, Richard Rowe, was then and there concerned in the commission of said public offense, to wit, embezzlement, in that the said defendant was present with the said Chester W. Rowe, at the office of the treasurer of Poweshiek county, Iowa, a short time before the commission of said public offense, and did then and there counsel and advise the commission of said public offense, and that the said defendant of the state of Iowa with the said Chester W. Rowe, and is now engaged in business with the said Chester W. Rowe, under an assumed and fictitious name, at the city of Mexico, in the republic of Mexico,—contrary to the form of the statutes in such cases made and provided, against the peace and dignity of the state of Iowa.                                                W. F. Allen.

"State of Iowa, Poweshiek County—ss.:

"I, W. F. Allen, being duly sworn, depose and say that the statements in the above information are true, as I verily believe.                          W. F. Allen.

"Subscribed in my presence, and before me sworn to, by W. F. Allen, this 19th day of July, 1895.                          H. F. Morton, Justice of the Peace."

The usual warrant for the arrest of the defendant was issued by the justice, and delivered to the sheriff of the county, who made return thereon that the defendant was not within the state. Upon the presentation to the state department of a duly-certified copy of this information, together with numerous affidavits tending to prove that Chester W. Rowe had embezzled over $30,000 of the public moneys of the county, and that Richard Rowe aided and abetted such embezzlement, and that they had both fled to the city of Mexico, where they had assumed fictitious names, and were doing business under the firm name of Rose Bros., at 2 Plateros, No. 2, Mexico, application was made by that department to the Mexican government for the extradition of Richard Rowe as a fugitive from justice, and the president appointed William Farmer Forsee agent of this government to receive Rowe from the Mexican authorities, and bring him to this country, and surrender him to the authorities of the state of Iowa. Upon due proceedings had for that purpose, Rowe was arrested in the city of Mexico, taken before the proper Mexican judge, who, after proper inquiry, reported the testimony to the department of foreign affairs for that government, and held Rowe to await the disposition of the case by that department. On the 7th of November, 1895, the Mexican government issued the following warrant of extradition:

(Translation.)

"Department of Foreign Affairs, Mexico, Nov. 7, 1895.

"Mr. Minister: Referring to the note, which on the 1st of last October I addressed to Mr. E. C. Butler, secretary of that legation, then charge d'affairs ad interim, I have the honor to inform your excellency that the judge who has under consideration the case instituted against Chester Rowe for embezzlement completed the investigations regarding Richard Rowe, who is accused of complicity in the same crime, and has placed him at the disposition of this department, with testimony of the case instituted against his brother Chester, so that the proper decision be rendered relative to the demand for the extradition of said Richard Rowe. This department has examined the documents in connection with said demand, as well as the investigations for information in said suit concerning Richard Rowe. Resulting from the examination thereof, that the crime imputed to Chester is proved, and that there exist suspicions that Richard is his accomplice, which would be sufficient for his legal arrest and trial in Mexico, had the crime been committed here, in accordance with the second clause of article 1 of the extradition treaty in force between this republic and the United States of America, the president has decreed that the said Richard Rowe be delivered to the United States of America for his consignment to the competent authority who is to try him, in compliance with the demand for extradition presented to this department by that legation, under date of June 30th, ultimo. To-day I issue to the governor of the federal district the orders necessary to the end that said Richard

Rowe be delivered to Mr. William F. Forsee, who is commissioned to receive him, and all aid which he may solicit be given him, for the safety of the prisoner. I renew to your excellency the assurance of my high regards.

"[Signed]                                                     Ignacio Mariscal.

"To His Excellency, Matt. W. Ransom."

In pursuance of the authority contained in this warrant, Rowe was brought back, by the agent appointed for that purpose, to Poweshiek county, Iowa, where he was indicted for the same offense set out in the information and affidavits upon which he was extradited. He demurred to the indictment, and the demurrer was sustained, upon the ground that the indictment did not state that the money embezzled was "unaccounted for." The information filed before the justice, and the affidavits submitted to the Mexican government upon which the warrant of extradition was granted, contained the same technical defect. The case was submitted to another grand jury, and a second indictment returned, which remedied the defect in the first, and described the offense with technical accuracy. In default of bail the defendant was committed to await his trial on this indictment. Thereupon the defendant applied, successively, to the court in which the indictment was pending, to the supreme court of the state, and to the circuit court of the United States for the Southern district of Iowa, to be discharged from custody, and to have it adjudged that he was not triable for the offense charged in the last indictment, because, as he alleged, it was not the offense for which he was extradited. The courts mentioned severally denied his petition, and from the judgment of the circuit court of the United States denying his petition he appealed to this court.

The following are the sections of the Iowa statute having any bearing on the case:

"5214. Embezzlement by Public Officers. If any state, county, township, school, or municipal officer, or officer of any state institution, or other public officer within the state, charged with the collection, safe keeping, transfer, or disbursement of public money, fails or refuses to keep in any place of deposit that may be provided by law for keeping such money, until the same is withdrawn therefrom upon warrants issued by the proper officer, or deposits such money in any other place than in such safe, or unlawfully converts to his own use in any way whatever, or use by way of investment in any kind of property, or loan without the authority of law any portion of the public money intrusted to him for collection, safe keeping, transfer or disbursement, or converts to his own use any money that may come into his hands by virtue of his office, shall be guilty of embezzlement to the amount of so much of said money as is thus taken, converted, invested, used, loaned, or unaccounted for, and, upon conviction thereof, he shall be imprisoned in the penitentiary not exceeding five years and fined in a sum equal to the amount of money embezzled; and, moreover, is forever after disqualified from holding any office under the laws or constitution of this state." McClain's Ann. Code Iowa, c. 4, § 5214.

"5699. Principal and Accessory. The distinction between an accessory before the fact and a principal, is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried and punished as principals." McClain's Ann. Code Iowa, c. 16, § 5699.

The articles of the treaty with Mexico, on the subject of extradition of fugitives from justice, having any relation to this case, read as follows:

"Article 1. It is agreed that the contracting parties shall, on requisition made in their name, through the medium of their respective diplomatic agents, deliver up to justice persons who, being accused of the crimes enumerated in article third of the present treaty, committed within the jurisdiction of the requiring party, shall seek an asylum, or shall be found within the territories of the other: provided, that this shall be done only when the fact of the commission of the crime shall be so established as that the laws of the country in which the fugitive or the person so accused shall be found, would justify his or her apprehension and commitment for trial if the crime had been there committed."

"Article 3. Persons shall be so delivered up who shall be charged, according to the provisions of this treaty, with any of the following crimes, whether as principals, accessories, or accomplices, to wit: Murder, * * * embezzlement of

public money; * · * · *" Treaty with Mexico, ratified December 11, 1861 (12 Stat. 1200). ·

Section 5275 of the Revised Statutes of the United States declares: "Whenever any person is delivered by any foreign government to an agent of the United States, for the purpose of being brought within the United States and tried for any crime of which he is duly accused, the president shall have power to take all necessary measures for the transportation and safe keeping of such accused person, and for his security against lawless violence, until the final conclusion of his trial for the crimes or offenses specified in the warrant of extradition, and until his final discharge from custody or imprisonment for or on account of such crimes or offenses, and for a reasonable time thereafter, and may employ such portion of the land or naval forces of the United States, or of the militia thereof, as may be necessary for the safe keeping and protection of the accused."

J. T. Allensworth, for appellant.

W. R. Lewis, opposing.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first contention of the petitioner is that, under the laws of Iowa, no one but an officer charged with the safe-keeping of public moneys can commit the crime of embezzlement of such moneys. It is said that there can be no accessory before the fact to such an offense; that section 5699 of the Iowa statute, which abrogates the distinction between an accessory before the fact and a principal, does not apply to one who aids and abets the embezzlement of public moneys by the official custodian thereof; and that the petitioner is therefore guilty of no offense whatever. By the common law, an accessory cannot be tried without his own consent before the principal, and, if the principal is acquitted, both must be acquitted, and there can be no conviction on an indictment charging him as principal. Dr. Wharton, in his work on Criminal Law, observes that the obstructions of justice caused by these subtleties have long been deplored; and while, in several states of the American Union it is already provided by statute that accessories before the fact are to be proceeded against as principals, in other states and in England the change will probably not be long delayed. 1 Whart. Cr. Law, § 205. These subtle distinctions between a principal and an accessory before the fact at common law, which were a fruitful source of the miscarriage of criminal justice, were abrogated by section 5699 of the Iowa statute; and in that state one who aids and abets the commission of a crime is in the same category with one who actually commits the offense. They are both principals. But we are spared the necessity of any extended discussion of the question whether the indictment under which the petitioner is now held charges an offense against the laws of the state of Iowa. The supreme court of that state denied the petitioner a writ of habeas corpus, asked for on the distinct ground, among others, that the indictment charged no offense against the laws of that state. In making that decision, the court necessarily passed upon this question adversely to the contention of the petitioner, and the judgment of that court is conclusive on the question in this court.

'The next contention of the petitioner is that he is being held for trial for an offense different from that for which he was extradited. It is settled by the judgment of the supreme court in the case of U. S. v. Rauscher, 119 U. S. 407, 7 Sup. Ct. 234, as well as by the provisions of section 5275 of the Revised Statutes of the United States, that, under the treaty with Mexico, the petitioner is exempt from trial for any other offense than that specified in the warrant of extradition until he has had a reasonable time to depart out of the United States. Is the petitioner held for trial for an offense different from that for which he was extradited? The information and affidavits laid before the Mexican authorities, and upon which that government acted in granting the warrant of extradition, stated in plain and unambiguous language the facts constituting the offense with which he is charged in the pending indictment. The indictment states the acts constituting the offense with more technical verbiage, but it describes the same offense described in the information and affidavits upon which the Mexican government was asked to, and did, surrender the petitioner, with the addition of a single technical averment, which will be noticed presently. The treaty provides for the surrender of the fugitive "when the fact of the commission of the crime shall be so established as that the laws of the country in which the fugitive or the person so accused shall be found, would justify his or her apprehension and commitment for trial if the crime had been there committed." The Mexican government is the best judge of its own laws, and the warrant of extradition issued by the department of foreign affairs of that government recites "that the crime imputed to Chester is proved, and that there exist suspicions that Richard is his accomplice, which would be sufficient for his legal arrest and trial in Mexico, had the crime been committed here." The Mexican government doubtless used the term "accomplice" out of abundant caution, and to remove any ground for the technical objection that is here made, which is, in effect, that the petitioner cannot be indicted and tried as a principal because he was extradited to be tried as an accessory before the fact, and that he cannot be tried as an accessory before the fact because the Iowa statute abrogates the distinction between a principal and an accessory. But the petitioner was not surrendered to answer as an accessory before the fact, or as a principal, but as an accomplice. An accomplice is defined to be:

"One who is concerned in the commission of a crime. The term, in its fullness, includes in its meaning all persons who have been concerned in the commission of a crime, all particeps criminis, whether they are considered, in strict legal propriety, as principals in the first or second degree, or merely as accessories before or after the fact." Bouv. Law Dict. tit. "Accomplice."

It is obvious, therefore, that the petitioner was extradited to answer for the part he played in the commission of this particular crime of embezzlement, whether it was as a principal or as an accessory before the fact. The third article of the treaty provides for the extradition of persons charged with the crimes therein mentioned, "whether as principals, accessories, or accomplices." The petitioner was a fugitive from the justice of the laws of the state of Iowa. By

the law of that state, where one embezzles public money, and another aids and abets the commission of the offense, they are both equally guilty of the crime of embezzlement; so that the offense with which the petitioner is charged is within the very letter of the treaty which provides for the extradition of persons charged with the crime of "embezzlement of public moneys," whether he is a principal or accessory, and the warrant of extradition, as we have seen, uses a term sufficiently comprehensive to include a principal as well as an accessory.

The technical defect in the information describing the offense, heretofore referred to, is the omission of the words "unaccounted for." In the case of State v. Brandt, 41 Iowa, 593, the supreme court decided that the word "or," preceding the words "unaccounted for," in section 5214, should be read "and," and that an indictment under that section which did not allege the money embezzled was "unaccounted for" was bad on demurrer. But this decision does not support the contention of the petitioner, which is, in substance, that:

"An insufficient information is equivalent to no information. Without an information, there is no charge. Any charge is different from no charge. Therefore, if the petitioner is tried at all, it will be on a charge for which he is not extradited."

It is too late in the day for this kind of logic to meet with any favor in the courts. Such subtle reasoning is no longer admitted to obstruct the course of justice. It would result in refining all common sense out of the law, and in the adoption of rules too technical and minute for the social conduct of men. If the petitioner had been tried and convicted in the district court on the first indictment, he could not have been discharged from imprisonment under that conviction on a writ of habeas corpus. The judgment might have been reversed, for error, by an appellate court exercising supervisory jurisdiction over the district court, but it would not have been void, or subject to collateral attack; and the reason is that the court had jurisdiction of the party and the offense. Errors in law, however numerous and gross, committed by the trial court in a case within its jurisdiction, can only be reviewed by appeal or writ of error in the court exercising supervisory or appellate jurisdiction over the trial court in the particular case. The writ of habeas corpus cannot be made to perform the office of a writ of error or appeal. Ex parte Ulrich, 43 Fed. 661; Ex parte Watkins, 3 Pet. 193, 7 Pet. 568; Ex parte Lange, 18 Wall. 163; Ex parte Parks, 93 U. S. 18; Ex parte Siebold, 100 U. S. 371; Ex parte Curtis, 106 U. S. 371, 1 Sup. Ct. 381; Ex parte Carll, 106 U. S. 521, 1 Sup. Ct. 535; Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152; Ex parte Crouch, 112 U. S. 178, 5 Sup. Ct. 96; Ex parte Bigelow, 113 U. S. 328, 5 Sup. Ct. 542; Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935; Ex parte Harding, 120 U. S. 782, 7 Sup. Ct. 780; In re Lane, 135 U. S. 443, 10 Sup. Ct. 760; In re Wight, 134 U. S. 136, 10 Sup. Ct. 487; In re Nielsen, 131 U. S. 176, 9 Sup. Ct. 672; In re Coy, 127 U. S. 731, 756, 8 Sup. Ct. 1263.

It does not follow, therefore, that an information or an indictment which is bad on demurrer is necessarily no information or indict-

ment at all. There is a wide difference between a technical error or omission in setting out the facts essential to constitute the offense, such as existed in the information and first indictment in this case, and no information or indictment. In the former case, if the sufficiency of the information or indictment is not challenged, or even if it is challenged and the court holds it good, the court may proceed to try the defendant, and if he is convicted, he can obtain no relief by the writ of habeas corpus; whereas, in the latter case the court has no jurisdiction to try him for any offense, and, the judgment being void, the defendant may avail himself of the writ of habeas corpus. Nor is the contention tenable that, when a demurrer to an indictment is sustained for a technical defect such as existed in this case, a second indictment, which conforms with technical accuracy to the requirements of the statute, charges another or a different offense. They both charge the same offense, though one of them does not charge it with sufficient technical accuracy to withstand the attack of a demurrer.

We entertain no doubt of the correctness of the judgment of the circuit court, but, if we did, we would not, on the facts disclosed in this record, discharge the petitioner, but would, in the exercise of the discretion with which we are invested, let the case take its regular course in the state court, and leave the petitioner to his remedy by writ of error from the supreme court of the state, and thence, if he was so advised, from the supreme court of the United States. "While," says Mr. Justice Harlan in delivering the opinion of the supreme court in Re Wood, 140 U. S. 278, 289, 11 Sup. Ct. 738, 742, "the courts of the United States have power, upon habeas corpus, to inquire into the cause of the detention of any one claiming to be restrained of his liberty in violation of the constitution or laws or treaties of the United States, it was not intended by congress that they should, by writs of habeas corpus, obstruct the ordinary administration of the criminal laws of the states, through their own tribunals. 'Where,' this court said in Ex parte Royall, 117 U. S. 241, 252, 253, 6 Sup. Ct. 734, 741, 'a person is in custody, under process from a state court of original jurisdiction, for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the constitution of the United States, the circuit court has a discretion whether it will discharge him upon habeas corpus in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinated to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the circuit court has still a discretion whether, under all the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the state, or whether it will proceed by writ of habeas corpus summarily to determine whether the petitioner is restrained of his liberty in violation of the constitution of the United States.' And we will add that, after the final disposition of the case by the highest court of the state, the circuit court, in its discretion, may put the party who has been denied a right, privilege, or immunity claimed under the constitution or laws of the United States to his writ

of error from this court, rather than interfere by writ of habeas corpus. These principles have special application where, as in the present case, there is no pretense that the statute under which the prosecution of the appellant was conducted is repugnant to the constitution or laws of the United States."

The judgment of the circuit court is affirmed.