[Crim. No. 1599. In Bank.—December 1, 1911.]

THE PEOPLE, Respondent, v. M. W. COFFEY, Appellant.

CRIMINAL LAW—QUESTION OF ACCOMPLICE — INSTRUCTIONS — QUESTION FOR JURY. — When the question of accomplice arises upon the trial of a criminal case, it is the province of the court to instruct the jury as to the law concerning accomplices; and if the facts are in dispute as to whether a witness is an accomplice, the question of fact is for the jury to determine, and in such case the jury's finding is not disturbed on appeal.

ID.—UNDISPUTED FACTS—QUESTION OF LAW—ACCOMPLICE AND CORROBORATION.—Where the facts are not in dispute, but the acts and conduct of the witness are admitted, it is a question of law for the court whether those acts and conduct make the witness an accomplice and, if so, whether his testimony has received that mandatory degree of corroboration required by section 1111 of the Penal Code.

ID.—REVIEW UPON APPEAL—LEGAL EFFECT OF EVIDENCE.—Where upon appeal it is urged that a conviction was had upon the uncorroborated testimony of an accomplice, the court of appeals is called upon to determine the question of law whether the verdict is contrary to the

legal effect of the evidence and in so determining to consider whether or not the witness upon whose testimony the conviction was had is an accomplice, and, if so, whether his evidence has received that degree of corroboration demanded by the law before a defendant may be convicted upon it.

ID.—RULES OF LAW AND EVIDENCE AS TO ACCOMPLICES DERIVED FROM COMMON LAW.—The rules of law and evidence controlling the testimony of an accomplice are drawn from the common law, which regarded him as not entitled to the same consideration as a clean man free from infamy, and the common-law judges instructed their juries that such testimony must be viewed with care, caution, and suspicion, which principle is embodied in subdivision 4 of section 2061 of the Code of Civil Procedure; and also that it should be corroborated in order to put faith in what the accomplice had said, which has become a rule of positive law in this state since 1851, as embodied in section 1111 of the Penal Code.

ID.—CODE DEFINITION OF "ACCOMPLICES."—Accomplices, as defined under section 31 of the Penal Code, are "All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present, have advised and encouraged its commission"; and they must therefore be accomplices, without regard to whether they are indicted as principals or not.

ID.—DETERMINATIVE CONSIDERATION AS TEST OF "ACCOMPLICE."—The single, sole determinative consideration which is the test of an "accomplice" is the part which the witness has borne in the crime perpetrated. If he has either committed the crime, or has aided in its commission, or has advised and encouraged its commission, his *status* is that of an accomplice. This alone is the governing principle of the law.

ID.—INDICTABILITY FOR SAME IDENTICAL CRIME ON TRIAL NOT A CRITERION.—It is not a legal criterion of an accomplice that he must be indictable as principal for the same identical crime as that charged against the defendant on trial. He may have advised and encouraged that crime, and so be an accomplice therein, and yet be punishable as principal for an offense distinct therefrom, yet associated therewith, to which the law attaches a distinct punishment. One is an accomplice for what he has done and not because of the form of punishment which the law may mete out for his acts.

ID.—CORRUPT CO-OPERATION IN CRIME INVOLVING ACCOMPLICES.—When a crime involves the co-operation of two or more people, the guilt of each will be determined by the nature of that co-operation. Whenever the co-operation of the parties is a corrupt co-operation, then always those agents are accomplices, even as at the common law they were principals. They are accomplices the one with the other, because their conduct is corrupt and each has mutually aided the other in the commission of a crime to which the corrupt participation of the two is necessary.

ID.—GIVING AND RECEIVING BRIBE—MUTUAL ACCOMPLICES.—Bribery at common law was "the voluntary giving or receiving of anything of value in corrupt payment for an official act done or to be done." It is the uniform rule of decision, not only of the common law, but of every state of the Union with a single exception, that the giver and receiver of the bribe are principals in the crime and so necessarily accomplices of each other. The giving and the receiving are reciprocal. Whenever it is a crime to take, it is a crime to give a bribe.

ID.—INDICTMENT FOR "AGREEING" TO RECEIVE AND "RECEIVING" A BRIBE. —Where the indictment is under section 165 of the Penal Code, for "agreeing" to receive and "receiving" a bribe, the agreement necessarily carries with it the essential concept of a criminal and corrupt bargain and the agents for the accomplishment thereof are necessarily accomplices.

ID.—ERRONEOUS INSTRUCTION—INDICTMENT FOR SAME CRIME A TEST.— Where an instruction, after giving the correct definition of an accomplice, incorrectly made the non-liability to indictment for the same crime as that charged a test, and on that ground stated that "the man who gives or offers a bribe is not for that reason an accomplice of the one who receives the bribe," it is error.

ID.—INSUFFICIENT CORROBORATION OF ACCOMPLICE.—It being established that a witness who gave a bribe is an accomplice of the one who received it, the important question remains as to whether or not his testimony was corroborated. While the corroboration may be slight, it must in and of itself, and independent of the testimony of the accomplice, tend to inculpate the defendant on trial with the commission of the crime. · It is held, that upon the evidence adduced there was no sufficient corroboration of the testimony of the accomplice and that the judgment of conviction resting upon his uncorroborated testimony must be reversed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from orders denying a motion in arrest of judgment and denying a motion for a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Carroll Cook, Franklin P. Bull, and Robert Ferral, for Appellant.

U. S. Webb, Attorney-General, W. H. Langdon, District Attorney, Wm. Hoff Cook, Assistant District Attorney, and Francis J. Heney, Assistant District Attorney, for Respondent.

HENSHAW, J.—Defendant was indicted under section 165 of the Penal Code, and was charged as a supervisor with having "agreed to receive and receiving" a bribe of four thousand dollars from James L. Gallagher, Abraham Ruef, and Tirey L. Ford. It was alleged that the agreement to receive the bribe and the reception of the bribe were "with the willful, felonious, unlawful and corrupt intent" upon the part of Coffey that his official vote, opinion, judgment, and action should be influenced thereby in the matter of granting to the United Railroads of San Francisco a franchise for an overhead trolley system.

From the judgment of conviction and from his various motions to set aside the judgment, in arrest of judgment, and for a new trial, each of which was denied by the court, defendant appeals. His principal contentions are that the court erred in the instructions which it gave upon the law of accomplices, and, that his conviction was had in violation of the law, upon the uncorroborated testimony of a self-confessed accomplice in his asserted crime.

When the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury touching the law of accomplices, and leave the question whether or not the witness be an accomplice for the decision of the jury as a matter of fact. (*People* v. *Kraker*, 72 Cal. 459, [1 Am. St. Rep. 65, 14 Pac. 196].) Whenever the facts themselves are in dispute, that is to say, whenever the question is whether the witness did or did not do certain things, which, admittedly, if he did do them, make him an accomplice, the jury's finding, upon familiar principles, is not disturbed. But where the facts are not in dispute, where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice. For the law declares in mandatory terms that "A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Pen. Code, sec. 1111.) Therefore, whenever upon appeal it is argued that the con-

viction was had upon the uncorroborated testimony of an ac-
complice, it is equivalent to a declaration that the verdict is
contrary to the law and the evidence, and this is always a legal
question. (Pen. Code, sec. 1181, subd. 6.) Hence, in every
proper case, a court of appeals is called upon to consider
whether or not the witness is an accomplice, and, if so, whether
his evidence has received the corroboration demanded by the
law before a defendant may be convicted upon it.

To the consideration of what constitutes a man an accom-
plice in a bribery case we are thus at once brought, and to an
understanding of these matters a brief statement of the evi-
dence becomes necessary. The principal witness for the prose-
cution was Gallagher, himself a supervisor. Gallagher, by his
own statements, was testifying under a promise of immunity,
agreed to by the prosecution, in consideration of his giving
truthful evidence touching his own crimes, and the crimes of
others on the board of which he was a member, including the
crime under examination. He swore that he acted as the inter-
mediary of Abraham Ruef and for Ruef approached and
consulted with his fellow members on the board in relation
to the corrupt bargains which were, and were to be, entered
into, and the amounts of money which the members of the
board were to receive for voting as Ruef desired. In this par-
ticular instance Gallagher spoke to Coffey, at the suggestion
of Ruef (quoting from his testimony): "Mr. Ruef told me
what he could or would give the board of supervisors in the
matter, and asked me to present the proposition to them and
I did so, and I reported back to Mr. Ruef from them that it
was all right, that the matter could go through." "I said to
Mr. Coffey in the matter of the overhead trolley, that there
would be $4,000 in that matter, and Mr. Coffey said that that
would be all right; words to that effect. That is the substance
of it." The trolley franchise was granted, and subsequent
thereto, Gallagher testifies, he gave to Coffey $4,000 in two
separate payments. This evidence, coming from the prosecu-
tion itself, is uncontroverted, and presents the legal question
whether, by virtue of it, Gallagher was an accomplice of
Coffey in the corrupt agreement thus charged and proved.

The rules of law and principles of evidence controlling the
testimony of accomplices, are drawn from the common law.

The difficulty which the common law judges experienced

was not in determining the weight to be given to the testimony of an accomplice. Under their rules of evidence a *convicted* felon could not testify. Influenced in no small degree by the maxim of the Roman law that a man of self-confessed infamy should not be heard as a witness against another (*Nemo, allegans turpitudinem suam, est audiendus*), their principal difficulty was in determining whether the oath and evidence of a self-confessed though unconvicted felon—an accomplice—should be received at all. When this question was resolved against the doctrine of the Roman law it was, of course, recognized that evidence of an accomplice, coming from a tainted source, the witness being, first, an infamous man, from his own confession of guilt, and, second, a man usually testifying in the hope of favor or the expectation of immunity, was not entitled to the same consideration as the evidence of a clean man, free from infamy. Hence, it soon became the practice of the common law judges, in the wide latitude allowed to them in the instruction of their juries, to advise the latter that the testimony of an accomplice, for the reasons indicated, was to be viewed with care, caution, and suspicion (see Code Civ. Proc., sec. 2061), that the accomplice stood before them as a witness entitled to little credit, and that the surest way of establishing his credit in their eyes was for them to note whether his testimony was corroborated in any material matter by independent evidence, and that if it were so corroborated they might put faith in all that the accomplice had said. Instructions to this effect did not, of course, embody any rule of positive law. They were but the expression of considerations naturally arising from a contemplation of the weight and value to be given to such evidence. Subsequently they were cast into the form of positive law by varying enactments in the codes and statutes of the states. In this state, the rule of positive law since the year 1851, is as has been declared in section 1111 of the Penal Code. Time has not changed the value of such evidence and succeeding legislatures have retained the rule, the amendment to the section in 1911 not materially affecting it.

But while the legislature was thus at pains to declare that a conviction could not be had on the uncorroborated testimony of an accomplice, it omitted to define this word. At common law no difficulty was experienced, for the word was interpreted

broadly to include principals in every degree and accessories before and after the fact. Those who "receive, relieve, comfort or assist" the felon, were regarded as having participated in his crime, and as meriting much the same punishment that he had earned. And so it will be found that at common law, and in the jurisdiction of the federal courts an accepted definition of an accomplice includes "all *participes criminis,* whether they are considered, in strict legal propriety, as principals in the first or second degree, or merely as accessories before or after the fact." (*In re Rowe,* 77 Fed. 161, [23 C. C. A. 103].)

Although the legislature did not in terms define an accomplice, it did lay down certain rules from which an acceptable definition of an accomplice may readily be derived. Thus it obliterated the common-law distinctions between principals in their different degrees and accessories before the fact, and declared that "all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed." (Pen. Code, sec. 31.) The object of this was both to simplify criminal procedure and to do away with the technicalities of the common law, which made the aider or abettor a principal in the second degree, and which forbade the accessory to be brought to trial until the principal had been convicted or outlawed, a rule that lived in modern times and did much mischief. (2 Stephen, History Criminal Law, 232.)

Rejecting from the category of accomplices the accessory after the fact (*People* v. *Collum,* 122 Cal. 186, [54 Pac. 589]), we may derive a satisfactory definition of an accomplice from the language of section 31 of the Penal Code above quoted. Accomplices, then, are "All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission." Certainly, since the law has said that all such persons are so tainted with guilt that they may be indicted as principals, it cannot be denied that they are also accomplices. This definition, moreover, runs counter to no authority, since by all, every person of legal responsibility, who knowingly and volun-

tarily co-operates with or aids or assists or advises or encourages another in the commission of a crime is an accomplice, without regard to the degree of his guilt. (1 Russell's Crimes, 49; Wharton's Criminal Evidence, 440; Rice's Criminal Evidence, sec. 319; Bishop's Criminal Procedure, sec. 1159.)

Having reached the point of defining an accomplice, it becomes proper to consider what acts or facts fix this relationship or characteristic upon a witness. Manifestly, the single, sole determinative consideration is the part which the witness has borne in the crime perpetrated. If the witness has committed the crime, if he has knowingly aided and abetted in its commission, or if he has advised and encouraged its commission, the existence of any one of these facts admitted or established stamps his *status* as that of an accomplice. This is the precise language of the law, and this, and this alone, is the governing principle of the law. Yet, in view of the cases hereinafter to be reviewed, it will be found that occasionally, a court losing sight of this paramount and all-controlling consideration, —namely, the conduct of the witness in relation to the crime, has wandered widely from the true test, and, in accordance with faulty definitions of its own making, has determined upon entirely false premises whether a witness is or is not an accomplice. The commonest of these errors may thus be expressed. The law declares that all persons concerned in the commission of a crime, whether they directly commit it, or aid and abet in its commission, or advise and encourage its commission, are principals. They are, of course, accomplices. Therefore an accomplice is one who may be indicted for the same crime as that charged against the person on trial, and therefore if he cannot be charged with the same crime he is not an accomplice. Here is epitomized the reasoning of such cases as *State v. Durnam*, 73 Minn. 150, [75 N. W. 1127], and the fallacy of the reasoning must be obvious. One is an accomplice in a crime because of the part that he has taken in it, not because he may be indicted as a principal. The latter is a mere accidental circumstance, depending upon the language of the statute, and in no way affecting the true touchstone,—namely, the part which the witness has taken in the offense. The judicial declaration that, under a statute such as our section 31 of the Penal Code, all accomplices may be indicted as principals, is perfectly sound. But the attempted reasoning

from this that if a person cannot be indicted as a principal, he is, therefore, not an accomplice, is absolutely fallacious. To illustrate: In the present condition of our law no one would question but that the man who instigated and incited a murder and the man who actually committed the murder were both accomplices in the crime of murder. No one would question, moreover, but that both could be indicted as principals in the crime of murder. But suppose that tomorrow the legislature, as it would be quite competent for it to do, should declare that where a man had incited murder he should be indicted only for subornation of murder, and upon conviction be punished by death, but that the man who committed the murder under such incitement should be charged with murder, and upon conviction should be punished by life imprisonment, there would be presented a case where the law denounced as different crimes the different acts of the parties. Would it for a moment be said that they ceased therefore and thereby to be accomplices in the crime of murder? Or, again, the law to-day declares that the giver of a bribe may be punished for the giving; that the officer who receives a bribe may be punished for the receiving. A offers B a bribe, and by this means advises and encourages the commission of a crime. B, in turn, consults his friend C, who "advises and encourages" B to accept the bribe. B returns to A and agrees to A's corrupt proposition, and A pays the bribe money. C is admittedly an accomplice. He has advised and encouraged B in the commission of a crime, but A has done precisely the same thing, and has gone even further than B in that he has not only advised and encouraged, but has become a party to the criminal agreement. By what logic or reasoning may it be said that C is an accomplice and A is not? Not because of the accidental circumstance, if such circumstance exist, that A can be charged with another crime growing out of the same acts; not because of the accidental circumstance, if it exist, that A cannot be charged with the same crime as B, for these *are* purely accidental circumstances and are not of the essence of the consideration. At common law the accomplice could not be indicted for the same crime, yet he was none the less an accomplice. The declaration that one *is* an accomplice if he can be indicted for the same crime charged against the defendant on trial is perfectly sound, but the converse of the declaration,—namely,

that if he cannot be indicted for the same crime, he is *not* an accomplice, is the merest sophistry which, ignoring the true test and meaning of the word, seeks to turn shadow into substance. That test and meaning, as we have said, are expressed in section 31 of the Penal Code. If a man has committed a crime, if he has aided and abetted in its commission, if he has advised or encouraged its commission, he is an accomplice with all other *participes criminis.*

It is, of course, no argument to say that where the law has denounced as separate crimes the separate acts of the parties as bribe giving and bribe taking, to hold the parties to be accomplices would make them principals in one crime and accomplices in another "at the same time and through the same overt act." This is a frequent occurrence in and condition of the law. The law may and oft does go further and make different offenses with different punishments of the *same* act. The prosecution may be had for any of the crimes embraced within the acts committed. But the law exacts only a single punishment, and upon conviction or acquittal for the given acts the defendant may successfully plead *autrefois convict* or *autrefois acquit* against another prosecution for the same acts under a different section of the code. Indeed, this condition of the law is expressly recognized in section 654 of the Penal Code which declares that "an act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." And as specific illustrations, subornation of perjury is declared a crime punishable by imprisonment in the state prison for not less than one nor more than fourteen years. (Pen. Code, secs. 126, 127.) A futile effort to induce a witness to commit perjury may be punished as an attempt under section 664 of the Penal Code, when upon conviction the defendant could be sentenced to state prison for a term not exceeding seven years. Yet by section 137 of the Penal Code the same attempt is declared to be a felony, and by section 18 of the code that felony could be punished only by a term of imprisonment not exceeding five years. Again, extortion under color of office contains all the elements of bribe taking, and the guilty official may be

indicted and prosecuted indifferently for either offense, notwithstanding that their punishments may be different. (*Com.* v. *Wilson,* 30 Pa. St. Super. Ct. 26.)

While our law generally does not seek to admeasure the degrees of guilt between principals, accessories, and accomplices, it is quite competent for it to do so, and in the past it has been quite common for it to do so. If A instigates B, C, D, and E to join in the commission of a murder, B furnishing the weapon, C transporting D and E to the scene of the crime, D holding the victim while E inflicts the fatal blow, the law might admeasure their degrees of criminality, define their offenses separately and punish them accordingly. If it did not do so all, under our code, would be accomplices and principals alike in the crime of murder. Would they be any the less accomplices, would they any the less have instigated, aided, abetted, and committed the crime because the law should happen to mete out different punishments for their separate acts of participation, as it actually did at common law?

Nor yet does it follow, because the particular act of participation of an accessory or accomplice in a crime has been denounced by our law as a separate crime, that he cannot therefore be indicted as a principal. If the law made manifest its intent that he should not be so indicted as a principal, it would be but an exception to the general provision of section 31. If it did not make manifest this intent, then the situation presented is that contemplated by section 654 of the Penal Code, where the act is made punishable in different ways by different provisions of the code. But in either case the accidental circumstances clearly do not affect the definition of an accomplice. One is an accomplice, we repeat, because of what he has done and not because of the form of punishment which the law may mete out for his acts. Wherever the law has denounced as a separate crime the particular act of participation by an accessory or accomplice, the sole logical and legal effect is not to destroy the relationship of accomplice, but merely to effect a modification of section 31 of the Penal Code, as though by an express proviso it should read, "All persons concerned in the commission of a crime," etc., "are principals in any crime so committed, provided that they shall not be indicted as principals in any case where the

law has denounced their participation as a separate crime and declared that they shall be prosecuted exclusively for such separate crime." But this, as we have said, does not and connot, by any species of legal hermeneutics or legerdemain, relieve an accomplice of his character of accomplice. It is merely prescribing a separate punishment for the particular act of one who is still an accomplice.

By a few courts which have regarded the *effort* to induce a witness to commit perjury as the essence of the crime of subornation, disregarding as negligible the success of the effort resulting in a corrupt agreement and in the commission of the perjury itself, it is held that in a charge of subornation the perjurer is not an accomplice with the suborner. The case most often cited and here relied upon by respondent is that of *Stone* v. *State,* 118 Ga. 717, [98 Am. St. Rep. 145, 45 S. E. 630]. That was a charge of subornation of perjury, the perjury having been committed. The testimony of the perjurer was received. It was contended that the perjurer was an accomplice. The supreme court of Georgia reasoned that while "in perjury and subornation of perjury the act of the two offenders is concurrent, parallel and closely related in point of time and conduct," still there was "sufficient inherent difference between the two to warrant the law-making power in separating the act into its component parts and making that of the suborner a new and independent offense, punishable with greater or less severity than that inflicted on the perjurer." From this the court reasoned that "the suborner is not, under our law, treated as the accessory of the perjurer." This is "further evident from the fact that they are punished differently, while under the code accessories before the fact are punishable in the same way as principals." The next step in the reasoning is sound. It is that "if not accessories the suborner and the perjurer are not accomplices." And having determined to its satisfaction that the suborner and the perjurer were not accessories, the conclusion that they were not accomplices followed irresistibly. The court would have made a more plausible presentation if it had reasoned solely from the proposition that the one substantive element of subornation is the effort and attempt to procure perjury, and that the success or non-success of the effort is a negligible quantity, and that it was thus like the crime of *soliciting* a bribe or the

crime of *offering* a bribe. But to place its reasoning upon the ground that the suborner is not an accessory of the perjurer, so that if the trial were for perjury the suborner would not be considered as an accomplice, does violence to the common law and to the decision of every state which has made the common law the basis of its jurisprudence. The accomplice at common law—the accomplice in this state—is one who advises and encourages the commission of a crime. How can it be said that the very instigator of the crime—the suborner—has not advised or encouraged it? But faulty as we believe even this reasoning would have been, because we conceive the corrupt agreement to be of the essence of the crime of subornation, (though not of attempt to suborn), it would still have been at variance with the common-law rule and the rule of such well considered cases as *People* v. *Evans,* 40 N. Y. 5, and *Commonwealth* v. *Smith,* 11 Allen, (93 Mass.) 243. The latter case merits quotation at length: "The crime of subornation of perjury is clearly in its nature that of an accessory before the fact to the perjury. Both perjury and subornation are felonies under our statute, being punishable by imprisonment in the state prison. (Gen. Stats., c. 163, secs. 1, 2, 3; c. 168, sec. 1.)

"Whoever procures a felony to be committed, though it be by the intervention of a third person, is an accessory before the fact, for it is not necessary that there should be any direct communication between the accessory and the principal. *Rex* v. *Cooper,* 5 C. & P. 535; Foster's Crown Law, 125, 2 Hawk. c. 29, secs. 1, 10; *Earl of Somerset's Case,* cited in 19 Howell's State Trials, 804. And the accessory is a felon, though his felony is different in kind from that of the principal. Foster's Crown Law, 343. So it is said to be a principle in law which can never be controverted, that he who procures a felony to be done is a felon. 1 Russell on Crimes, 32.

"We cannot see that the application of these principles is changed, when the crime of the accessory before the fact is made by statute a substantive felony. The object of making it a substantive felony may be either to provide a distinct or milder punishment upon conviction, or to authorize the indictment and conviction of the accessory where the principal has not been convicted. But whether the crime is made the subject of separate prosecution and punishment or is to be

included in an indictment with the principal offense will not, in the opinion of the court, change the definition of it, or alter the facts or circumstances in which the commission of it consists. The same facts to be averred and proved in the same way, will substantiate the crime in one case as in the other. . . . The crime of subornation of perjury would consist in procuring perjury to be committed, directly or indirectly, as much after subornation was made a felony as before."

To the same effect is the case of *State* v. *Fahey,* 3 Pennew. (Del.) 594, [54 Atl. 690], and in *State* v. *Renswick,* 85 Minn. 19, [88 N. W. 22], the supreme court of Minnesota which, as we shall see, is the only court that announces the extreme view that the briber and bribed are not accomplices, declares that in a trial for subornation of perjury the mere *attempt* to suborn testified to by the witness does not make him an accomplice, but if the subornation itself is sought to be established by the testimony of the perjurer the latter is an accomplice and his evidence must be corroborated.

Wherever the commission of a crime involves the co-operation of two or more people, the guilt of each will be determined by the nature of that co-operation. Whenever the co-operation of the parties is a corrupt co-operation, then always those agents are accomplices, even as at common law they were principals. To the crime of seduction two parties are necessary, but the co-operation of the seduced is not criminal. She is a victim and she is not therefore an accomplice of the seducer. In such lesser offenses as laws denouncing the *sale* of lottery tickets or the *sale* of liquor, while two are necessary to the transaction and to the commission of the crime, the law denounces only the *selling* and reasons that the purchaser's act is entirely innocent and he will not be regarded as an accomplice. In cases of abortion, where the law denounces the commission of an abortion, some cases hold that the consenting pregnant woman is not an accomplice. These decisions doubtless arise in part out of a tenderness for the sex and a consideration of the extreme temptations by which a woman so situated may be beset. Under our law a woman may or may not be an accomplice, depending upon her part in the transaction. Thus she may consent to the taking of the drugs, or the performance of the operation in ignorance of the intended purpose. She may, indeed, be coerced into submission, in neither of which

cases would she be an accomplice. But if a woman voluntarily solicits the performance of such an operation upon herself and to that extent induces it, it is impossible to see how she can fail to have been an instigator and encourager of the crime, and so an accomplice. Such is the ruling of the Ohio supreme court in *State* v. *McCoy,* 52 Ohio St. 157, [39 N. E. 316], and such is the decision of this state in *People* v. *Josselyn,* 39 Cal. 393, and the recognition of the relationship of an accomplice is evidenced by the provisions of the Penal Code, which in section 1108, declares that upon a trial "for procuring or attempting to procure an abortion, or aiding or assisting therein, the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence."

In adultery and fornication, where the willing consent of the woman is proven or assumed, the courts have found no difficulty in declaring her to be an accomplice with the man. For there, differing from abortion, no considerations of the temptation of the woman's hard lot operate to soften the courts' views. They are accomplices the one with the other because their conduct is corrupt and each has mutually aided the other in the commission of a crime to which the corrupt participation of the two is necessary. (*State* v. *Scott,* 28 Or. 331, [42 Pac. 1] ; *Merritt* v. *State,* 12 Tex. App. 203; *Townser* v. *State,* 58 Tex. Crim. 453, [137 Am. St. Rep. 976, 126 S. W. 572].)

Bribery at common law as defined by Bishop (1 Bishop, New Crim. Law, 85) was "the voluntary giving or receiving of anything of value in corrupt payment for an official act done or to be done." It is the uniform rule of decision, not only of the common law but of every state of the United States, with one exception hereinafter to be considered, that the giver and the receiver of the bribe are principals in the crime, and so necessarily accomplices of each other. The giving and the receiving are reciprocal. (*Rex* v. *Vaughan,* 4 Burr, 2494; *Regina* v. *Boyes,* 1 Best & Smith, 311.) In the Vaughan case, says Lord Mansfield: "Wherever it is a crime to take it is a crime to give." Various states have in various ways denounced as crimes certain phases, elements, and transactions going to the crime of bribery, but stopping short of its completion. Thus, in some states the *soliciting* of a bribe

without its payment is a crime. (Pen. Code, sec. 93.) In others it is not. In some states the *offer* to pay a bribe without regard to its acceptance is a crime. (Pen. Code, sec. 93.) In others it is not. Manifestly in the crimes last mentioned, since the denounced act in no wise depends upon a plurality of agents, in no wise rests upon the corrupt assent, agreement, or procurement of another, the person approached is not an accomplice of the approacher. But whenever a crime necessarily embraces the corrupt, guilty, criminal co-operation of two or more persons, those persons always have been and must be accomplices.

This, then, is the true test and rule: If in any crime the participation of an individual has been criminally corrupt he is an accomplice. If it has not been criminally corrupt he is not an accomplice. In those cases where the concurrent act or co-operation of two people is necessary, as in seduction, sometimes in abortion, and in the minor offenses of selling liquor, lottery tickets or harmful drugs, the relationship of accomplice does not exist because the co-operation of the other party is not denounced by the law as criminally corrupt, and, as matter of fact, need not be criminally corrupt. Upon the other hand, where the act requires the co-operation of two persons, and their co-operation is criminally corrupt, the relationship of accomplice is at once established, as in adultery and fornication, in duelling, in agreeing to fight a duel, in illegal rebating (*United States* v. *New York Central etc. R. R. Co.*, 146 Fed. 298), in bribery, and in all forms of criminal agreement, where the agreement itself constitutes the crime. Conspiracies are typical instances of agreements in and of themselves constituting crimes. All the conspirators are principals and, of course, accomplices.

In the charge against this defendant of "agreeing to receive a bribe" and "receiving a bribe," each element, the agreeing and the receiving, necessarily contemplates the criminally corrupt co-operation of another (eliminating from consideration, of course, the feigned accomplice). To this proposition the authorities are so numerous and so uniform that one is rather embarrassed by the wealth than by the dearth of them. But on the question of accomplices in bribery alone, as sustaining this principle, either tacitly or with discussion, may be cited *Newman* v. *People,* 23 Colo. 300, [47 Pac. 278]; *People* v.

*Bissert,* 75 N. Y. Supp. 630, 71 App. Div. 118, affirmed 172
N. Y. 643, [65 N. E. 1120]; *People* v. *Winant,* 24 Misc. Rep.
361, [53 N. Y. Supp. 695]; *People* v. *Acretelli,* 57 Misc. Rep.
574, [110 N. Y. Supp. 440]; *State* v. *Callahan,* 47 La. Ann.
444, [17 So. 50]; *State* v. *Smalls,* 11 S. C. 262; *State* v.
*Herner,* 1 Marv. (Del.) 504, [41 Atl. 139]; *Murphy* v.
*State,* 124 Wis. 635, [102 N. W. 1087]; *People* v. *McCarry,*
136 Mich. 316, [99 N. W. 147]; *People* v. *Fielding,* 36
App. Div. 401, [55 N. Y. Supp. 530]; *Ruffin* v. *State,* 36
Tex. Crim. 565, [38 S. W. 169]; *O'Brien* v. *State,* 6 Tex. App.
665; *Birch* v. *State,* (Tex. Crim.) 106 S. W. 344; *State* v.
*Carr,* 28 Or. 389, [42 Pac. 215]; *Butt* v. *State,* 81 Ark. 173,
[118 Am. St. Rep. 42, 98 S. W. 723]; and *State* v. *Duff,* 138
Am. St. Rep. 269, (note), where it is said: "It may be stated
as a general rule that a person offering, giving or paying a
bribe is an accomplice of the person who receives it, par-
ticularly wherever the statutes make it a crime for a person
to offer, give or pay and a crime for a person to receive a
bribe."

There is but one court, as has been intimated, which has
advanced a view on this subject contrary to all other author-
ities and decisions. . That is the supreme court of Minnesota,
in the case of *State* v. *Durnam,* 73 Minn. 150, [75 N. W.
1127]. In that case the defendant was indicted and convicted
of the crime of "asking" for a bribe, the crime contemplated
in our state by such sections as Penal Code, 93 and 94. He
had solicited the bribe from Richards and Halvorson, wit-
nesses in the case. The defendant's demands were not ac-
ceded to; the bribe money was not paid. Upon appeal it was
contended that Richards and Halvorson were accomplices.
The attorney-general in his brief made the argument that
follows: "As to defendant's contention that Richards was an
accomplice, it seems to us that, if a person from whom a bribe
is asked is an accomplice when he refuses to give it, then a
person who is held up on the street at night by a highwayman
is an accomplice. In both cases the person robbed and the per-
son solicited furnish subjects upon which the crime could be
committed, but that does not make them accomplices. In
order to be an accomplice a person must be a criminal. He
must do a criminal act with a criminal intent, and the person
who is merely asked for a bribe may refuse it and be perfectly

innocent of any offense." The argument of the attorney-general was perfectly sound. It could have been adopted by the court with absolute security. But the court went still further and, under the fallacious formula above adverted to, worked out the proposition that if the witness could not have been indicted for the offense he was not an accomplice; and that, consequently, if the law had denounced the acts of participation of the two as separate offenses "the one is not the accomplice of the other." How utterly mistaken this argument is, we think has been abundantly shown. We have already pointed out how this same court in the case of perjury and subornation, crimes made separate and distinct by the Minnesota law, has held, notwithstanding, that the testimony of the perjurer must be corroborated in a charge against the suborner. We are not called upon to attempt to reconcile the inconsistency of these decisions, and it is sufficient to point out that *State* v. *Durnam* is unique in the history of the law.

The charge against this defendant, as we have seen, is under section 165 of the Penal Code. It is not for *asking* or *soliciting* a bribe. It is for *"agreeing"* to receive and *"receiving"* a bribe. The agreement necessarily carries with it the essential concept of a criminal and corrupt bargain. There can be no agreement without a meeting of minds, and a meeting of minds for this base bargain is declared to be a crime. There is nothing in the law to suggest even that in such a crime the two parties stand in any different position from that occupied by two who agree to fight a duel. In such an agreement the act of the person who contracts to pay the consideration is admittedly base, corrupt, and criminal. Moreover, his conduct is essential to the very existence of the crime of agreeing. How then shall it be said that he is not, within the narrowest or the fullest meaning of the law, an accomplice of the man agreeing to take the bribe? He is an actual participant in the crime, as well as an aider, abettor, adviser, and encourager in its commission, for it is to be remembered that in the case at bar the crime itself is the *agreement.* An officer may solicit bribes, may ask for bribes, may advertise his willingness to accept bribes. Each one of these acts is a separate, distinct, and recognized crime, but no one of them is the crime of *agreeing* to take a bribe, which *ex vi termini* requires the guilty co-operation of another. (*United States* v. *Deitrich,*

126 Fed. 664.)  Moreover, since, as we have seen, by all of the
authorities, saving one, when the bribery is completed the
payer of the bribe and the recipient of the bribe are recipro-
cally accomplices in the bribing, it cannot successfully be
argued that in the perfected agreement for the accomplish-
ment of this crime the same two persons are not accomplices.

With the law thus before us we are in a position to consider
the rulings of the trial court.

The court gave the following instruction: "Where two or
more persons are concerned in the commission of a crime,
whether they or either of them directly commit the act con-
stituting the offense, or aid and abet in the commission, or not
being present have advised and encouraged in its commission,
each one of them is an accomplice with the other in any
crime so committed, and the final test of the question as
applied to a witness in any case is, could such witness lawfully
be indicted with the defendant for the offense on trial?  If
so, he is an accomplice within the meaning of the law.  If
not, he is not, and the man who gives or offers a bribe is not
for that reason an accomplice of the one who receives or agrees
to receive a bribe."  The opening sentence of this instruction
defines an accomplice in just terms.  But when it proceeds
to say that the final test as appplied to a witness in any case
is "could such witness lawfully be indicted with the defendant
for the offense on trial," the court adopted the fallacious
reasoning of the Durnam case, (73 Minn. 150, [75 N. W.
1127]), and fell into error—an error which was repeated in the
closing sentence with, "the man who gives or offers a bribe is
not, for that reason, an accomplice of the one who receives or
agrees to receive a bribe."  For, as Lord Mansfield said,
"Wherever it is a crime to take it is a crime to give."  These
crimes are reciprocal and mutually interdependent.  The same
is true of an agreement to receive a bribe.

It thus being established that Gallagher was clearly an ac-
complice, the equally important question remains whether or
not his testimony was corroborated.  If it be corroborated, up
to the requirements of the law, it might be argued that, not-
withstanding the erroneous instruction above quoted, the jury
determined that he was an accomplice, but rendered its verdict
because of the corroborating evidence.  Upon this it is de-
clared by respondent that, treating Gallagher as an accomplice,

his evidence was sufficiently corroborated. The corroboration of an accomplice's testimony, as has been said, may be slight. (*People* v. *Melvane,* 39 Cal. 616; *People* v. *Clough,* 73 Cal. 351, [15 Pac. 5].) But it must in and of itself, and independent of the testimony of the accomplice, tend to inculpate the defendant on trial with the commission of the crime. But no part of the testimony which the respondent declares effects such corroboration is of any legal effect for this purpose. Thus it is said that the defendant's act "established primarily by Gallagher's direct testimony" tends to corroborate Gallagher. But this, in legal effect, is but the untenable declaration that one part of the evidence of an accomplice may corroborate another part. "The testimony of independent witnesses as to the defendant's votes in the board of supervisors on the bills and ordinances in relation to the overhead trolley system" does no more than to show how he voted, and affords not the slightest independent evidence that he so voted under a corrupt agreement to accept a bribe for so doing. The immunity contract offered in evidence did no more than to declare that immunity would be granted for any and all crimes which Coffey as a supervisor might have committed, but contained no reference whatsoever to this or any particular crime. The tracing of a fund from the United Railways into the hands of Ruef was likewise insufficient. This was but a showing of the possession of sufficient money by the alleged briber. It did not tend to show that the defendant actually received any of it. (See *People* v. *Bissert,* 73 N. Y. Supp. 630, 71, App. Div. 118, 16 N. Y. Crim. Rep. 409, 172 N. Y. 643, [65 N. E. 1120].) The other matters of evidence alleged as establishing sufficient corroboration are equally without substance. It is unnecessary to discuss them all. But in exemplification, after Coffey was indicted for the present crime, Gallagher interceded on his behalf with the district attorney, and sought to have the latter abandon the prosecution. This is urged as corroboration. So far as appears it was an unsolicited act, and could not have the slightest effect as showing, from an independent source, that Coffey either corruptly agreed to take a bribe, or corruptly received a bribe. The latter fact, the reception of the bribe, stands equally upon the uncorroborated testimony of Gallagher. Moreover, the money was received after the franchises were

granted, and it is well established that however atrocious in good morals the reception of a present after the act may be, the acceptance of a gift without corrupt prior understanding is not bribery. (2 Wharton's Criminal Law, 10th ed., sec. 1858; *State* v. *Ellis*, 33 N. J. L. 102, [97 Am. Dec. 707]; *Walsh* v. *People*, 65 Ill. 58, [16 Am. Rep. 569].)

It follows herefrom that the testimony of Gallagher is corroborated in no respect required by the law, and for the reasons given the judgment and orders appealed from are reversed and the cause is remanded.

Shaw, J., Melvin, J., Lorigan, J., Sloss, J., and Beatty, C. J., concurred.