[Crim. No. 290.   Department One.—September 10, 1897.]

THE PEOPLE, Respondent, v. OLIVER W. WINTHROP, Appellant.

CRIMINAL LAW—TRIAL—TIME FOR PREPARATION—REFUSAL OF REQUEST—ABSENCE OF EXCEPTION—TRIAL WITHOUT OBJECTION—APPEAL—PRESUMPTION. Where seventeen days' time was allowed to a defendant under indictment, in which to prepare for trial, and no exception was taken to an order refusing his request for thirty days' time for preparation, and defendant went to trial without objection that he was then unprepared for trial, or applying for a further continuance, it must be conclusively presumed upon appeal that he was then ready for trial; and where nothing appears in the record to show that he was prejudiced by the refusal of a longer time, no error is shown under the circumstances, and no violation appears of defendant's right to a reasonable opportunity to prepare for his trial.

ID.—DENIAL OF CHALLENGES FOR CAUSE—NONEXHAUSTION OF PEREMPTORY CHALLENGES.—The denial of defendant's challenges for cause will not be considered upon appeal, where it appears from the record that, when the jury was completed, the defendant had remaining more peremptory challenges unexhausted than there were denials of his challenges for cause. A defendant should not be heard to complain of error, the injurious effects of which he has suffered, if at all, only by reason of his acquiescence in or failure to avoid it, when he had the means and opportunity to do so.

ID.—ROBBERY—ENTICING VICTIM TO SUITABLE PLACE—EVIDENCE—DECLARATIONS OF DEFENDANT—PROPOSAL TO KIDNAP AND ROB.—Where the victim of the robbery charged against the defendant was a stranger in the city, to whom the defendant introduced himself under a false name, and who was enticed by the defendant to an isolated cottage, under the false representation that he was taking him to make a friendly call at defendant's home, in which cottage he was violently assaulted by defendant and a confederate, bound hand and foot, and robbed, and kept bound and confined under threats of torture and death, to induce him to authorize the payment of twenty thousand dollars to the defendant, evidence is admissible to show all of the declarations made by the defendant to the person robbed, and also to show that defendant had proposed to another witness that they should go in together, and "kidnap" the man, and force him by torture to make a check, or give up money, and had said that a house could be rented for that purpose, and that he thought fifty thousand dollars could be realized, and that he had told the witness on the day of the robbery that he had introduced himself to the man, and that he had the house rented, and his plans all formed, and was then waiting for him according to appointment; and such evidence, being admissible to connect defendant with the offense laid, and to identify him as a guilty participant therein, it is immaterial whether it had or had not a ten-

dency to show an intent to commit another offense.

ID.—EXHIBITS FROM SCENE OF ROBBERY.—Exhibits of articles taken from the house where the robbery was committed, and identified by the person robbed, and shown to have been used by defendant in connection with the offense, are admissible as a part of the transaction, and as tending to corroborate the witness as to the circumstances of the crime.

ID.—CIRCUMSTANCES OF ARREST—CONCEALMENT—DISGUISE—DECLARATIONS—ARTICLES TAKEN FROM DEFENDANT.—Evidence is admissible to show that at the time of the arrest the defendant was apparently hiding in disguise and passing under an assumed name, and denied his identity to the arresting officer, and that among the articles found on his person were several newspaper clippings containing accounts of the robbery, and a recently purchased railroad ticket from Oakland to Mojave.

ID.—LARCENY—ABSENCE OF INSTRUCTIONS.—An objection that the court erred in failing to instruct the jury that the offense of larceny was included in the charge against the defendant is not tenable, when no such instruction was requested, and where such instruction would not have been pertinent to any evidence in the case.

ID.—INSTRUCTION AS TO PRESUMPTION OF INNOCENCE.—An instruction to the jury that the presumption of innocence accompanies the defendant throughout the trial, and goes with the jury in their retirement to consider their verdict, and will avail to acquit the defendant unless overcome by sufficient proof of guilt, that they must examine the evidence by the light of that presumption, and that unless, upon examining it, they find it sufficiently strong to overcome and remove the presumption and to satisfy them of the defendant's guilt beyond a reasonable doubt, he is entitled to an acquittal correctly states the law.

ID.—PREPARATION OF AFFIDAVITS FOR NEW TRIAL—MISCONDUCT OF JURY—NEWLY DISCOVERED EVIDENCE—INADEQUATE SHOWING FOR FURTHER TIME.—There is no adequate showing of necessity for further time for the defendant to prepare affidavits on motion for new trial to establish misconduct of the jury and newly discovered evidence, where the showing does not indicate what the misconduct of the jury consisted in, or the name of any juror guilty of misconduct, nor state the nature of the newly discovered evidence desired, nor that there was any reasonable expectation that it could be obtained, nor why it could not have been produced at the trial.

ID.—PUNISHMENT FOR ROBBERY—IMPRISONMENT FOR LIFE—CONSTRUCTION OF PENAL CODE.—The provision of section 213 of the Penal Code, that robbery is punishable by imprisonment in the state prison "not less than one year," does not establish the intent of the legislature that the punishment must be limited to a definite term of years; but such intent is expressly negatived by section 671 of the Penal Code, which expressly authorizes imprisonment for life in cases where no limit to the duration of the imprisonment is declared; and a sentence of imprisonment for life for robbery, is not in excess of the power of the court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. William T. Wallace, Judge.

The facts are stated in the opinion of the court.

Frank V. Bell, for Appellant.

W. F. Fitzgerald, Attorney General, W. H. Anderson, Assistant Attorney General, and Henry E. Carter, Deputy Attorney General, for Respondent.

VAN FLEET, J.—Defendant was convicted of robbery and sentenced to life imprisonment. He appeals from the judgment and from an order denying his application for a new trial, urging numerous errors in the rulings of the trial court.

1. It is first strongly contended that the court violated defendant's rights in compelling him to go to trial with unseemly haste, and without sufficient time to adequately prepare for his defense.

The bill of exceptions shows that the indictment was filed August 7, 1896, and defendant arraigned thereunder on August 14th; that after certain proceedings of a more or less dilatory nature his plea was entered, and the case subsequently, on August 21st, came up to be finally set for trial. At this time defendant asked for at least thirty days in which to prepare for trial, making a very general showing that he could not reasonably prepare earlier; but this request was denied, and the case was set down to be tried on September 1st. No exception was taken to the action of the court in thus refusing defendant's request for a longer time in which to prepare for trial, and on September 1st, when the case was called, defendant, as stated in the bill of exceptions, "went to trial without at that time making any objection to doing so; he did not at that time claim that he was then unprepared for trial, and he did not then apply for a further continuance of the case; he had had in all some seventeen days of time."

It will thus be seen that the record wholly fails to disclose a case violative of defendant's right to a reasonable opportunity to prepare for his trial. We cannot say as matter of law that a period of seventeen days was not sufficient time, under the circumstances surrounding him, for such purpose; and the record fails to show that it was not such as a mat-

ter of fact.  Indeed, there is nothing in the record which in any way indicates that the defendant was not fully ready for trial on September 1st; to the contrary, the fact that he at that time went to trial without objection gives rise to the conclusive presumption here that he was ready.  Nor was there anything arising in the course of the trial which points to the conclusion that defendant was prejudiced by the action of the court in then proceeding with the trial.  Under such circumstances no error is shown. The language quoted and relied upon by appellant from *People v. Fredericks,* 106 Cal. 554, on this subject, had reference to the particular circumstances of that case; it does not announce a rule of conduct for other cases, and has no proper application to the facts before us.

2. It is next objected that the court erred in denying defendant's challenge for cause to each of the jurors McMillan and Fogg. Under the doctrine of the very recent and well-considered case of *People v. Durrant,* 116 Cal. 179, it is unnecessary to consider the question mooted by counsel, whether the examination of these jurors disclosed a state of mind on the part of either or both which would render the ruling of the court in disallowing the challenges erroneous, since it appears from the record that when the jury was completed the defendant yet had three peremptory challenges unexhausted.  It was held in that case, after mature consideration, that where challenges for actual bias are made by the defendant and denied, and the defendant fails thereupon to exercise his right to challenge the jurors peremptorily, but accepts them, and it appears that when the jury was completed the defendant had more than sufficient unused peremptory challenges to have enabled him to remove  the obnoxious jurors, the ruling of the court in disallowing the challenge for cause will not be reviewed here, because, even if erroneous, it will be regarded as without prejudice.  This is put upon the manifestly sound ethical principle that a defendant should not be heard to complain of an error the injurious effects of which he has suffered, if at all, only by reason of his acquiescence in or failure to avoid it when he had the means and opportunity to do so.

3. The robbery occurred in the city of San Francisco on August 3, 1896, under circumstances substantially these: The victim, James Campbell, a stranger in the city, a man of advanced

years, was induced by defendant, under the false pretense and representation that he was taking him to make a friendly call at defendant's home, to accompany the latter to a small and somewhat isolated cottage in the extreme western and thinly settled portion of the city, where, after being introduced into the house, he was violently assaulted by defendant and a confederate, knocked down, bound hand and foot, a considerable sum of money and some other valuables taken from his person, and then kept bound and confined for more than two days, under repeated threats of torture and death, in an effort to induce him to sign papers intended to authorize the payment of twenty thousand dollars to defendant.

The theory of the prosecution was that the robbery was the result of a deliberate and previously concocted scheme and plan of the defendant to entice Campbell to the house where the robbery occurred for the purpose of robbing him and extorting a large sum of money from him as the price of his liberty. In accordance with this theory the prosecution was permitted, against defendant's objections, to introduce evidence tending to show that Campbell, whose home was in the Hawaiian Islands, had, while stopping at the Occidental Hotel in the city of San Francisco during the months of June and July, 1896, attracted the attention of defendant, who was about the hotel lobby; that defendant made inquiries about him, and learning that he was a very wealthy man from Honolulu, expressed a desire to get acquainted with him; that prior to the robbery he, on several occasions, approached one Urquhart, an acquaintance of his, of whom he had made inquiries about Campbell, with a proposition that they go in together and "kidnap" Campbell and force him to give up money, suggesting that a house or other suitable place could be rented where they could take him and force him by torture to make a check, or by other means give up money, and that he thought fifty thousand dollars could be realized. It was shown that on the thirty-first day of July, while Campbell was stopping temporarily at the Hotel Vendome in the city of San Jose, defendant appeared there, and, approaching Mr. Campbell, introduced himself under a false name, and, engaging him in conversation, commenced making inquiries about the Hawaiian Islands, stating in substance that he had a large amount of money to invest, and had about concluded to invest in the islands. He stated that the only

difficulty lay in his wife's state of health, which made her afraid of the sea and the climate, and he finally solicited Campbell to call on his wife in San Francisco and talk with her about the climate, etc. Campbell expressed doubts about having time to do so, telling defendant that he would be in San Francisco on August 3d, but would sail for the islands the day after, and would be very busy, but that if he found time would go with defendant to see his wife; that on August 3d, Campbell having returned to San Francisco, the defendant again came to him at the Occidental Hotel, about 1 o'clock in the afternoon, and repeated the request that Campbell go out to his home to see his wife, but at this time Campbell refused for want of time. Later in the day, however, about 3 o'clock, defendant came to where Campbell was sitting in the hotel office and told him he had taken steamer passage for himself and wife to the islands for the following day, and again urged Campbell to go with him to see his wife, telling him their home was not far. Campbell finally consented, and, going with defendant to the house indicated above, the robbery occurred as stated. It was also shown that on the day of the robbery, about 12:30 P. M., defendant met Urquhart at the Occidental Hotel, and again urged him (although unsuccessfully) to go in with him in his scheme to kidnap Mr. Campbell. He told Urquhart that he had been to San Jose and introduced himself to Mr. Campbell; that he had the house rented and his plans all formed, and was then waiting for Mr. Campbell according to appointment.

Defendant took exception to the admission of this evidence as to what occurred in the conversations between defendant and the witnesses Campbell and Urquhart, and of the declarations and statements made by defendant therein, the substance of which is as set forth above, upon the ground that these matters all occurred prior to the actual commission of the offense, and had no connection therewith, nor any relevant tendency to prove the charge laid; and particularly, to the evidence as to defendant's efforts to induce the witness Urquhart to embark with him in his unlawful enterprise, on the further ground that it tended to connect defendant with an attempt to commit another and distinct offense—that of kidnapping. But, manifestly, this evidence was both relevant and material, and had a direct tendency to connect defendant with the offense laid, and to identify him as a

guilty participant therein. It tended logically and directly to establish one coherent and consistent method pursued by defendant from the beginning in the accomplishment of his ultimate design of robbery. And being admissible for this purpose, even if it be conceded that his declarations to Urquhart had incidentally a tendency to show an intent to commit another offense, this would not render them inadmissible. But we do not regard them as necessarily having any such tendency. While the defendant used the term "kidnap" in his proposition to Urquhart, the evidence very clearly tends to show that this term was not used in its technical sense as employed in the statute defining that offense, but as intended to designate the very act which he ultimately accomplished—that of enticing or decoying his victim to a suitable place for the purpose of robbery.

4. There was no error in admitting in evidence as exhibits the various articles produced from the house where the robbery was committed, and identified by the witness Campbell. They were all shown to have been used by defendant in connection with the offense, and were properly admitted as a part of the transaction and as tending to corroborate the witness as to the circumstances of the crime.

5. Nor was there any error in admitting evidence of the circumstances attending defendant's arrest, including his declarations at the time, or in permitting the prosecution to introduce the various articles taken from his person. This evidence showed that when arrested, shortly after the commission of the offense, defendant was apparently hiding in the city of Oakland away from the place of his residence; that he was in disguise, and passing under an assumed name, and denied his identity to the arresting officer; that among the articles found upon his person were several newspaper clippings containing accounts of the robbery and a recently purchased railroad ticket from Oakland to Mojave. Such evidence is always admitted as having a tendency greater or less, according to the circumstances, to establish guilt.

6. It is objected that the court erred in failing to instruct the jury that the offense of larceny was included in the charge against defendant. But there was no request for such an instruction; and, moreover, the instruction would not have been pertinent to any evidence in the case. (*People v. Arnold,* 116 Cal. 682.)

7. On the subject of the presumption of innocence the court instructed the jury: "As observed already, Winthrop alone is on trial, and his plea to the indictment is a plea of not guilty. Upon that plea a presumption of his innocence arises; that presumption accompanies him throughout the trial; it goes with you in your retirement to consider your verdict; it will avail to acquit Winthrop unless it be overcome by sufficient proof of guilt; you must examine the evidence by the light of that presumption, and unless upon examining it you find it sufficiently strong to overcome the presumption of innocence, to remove it, and moreover, to satisfy you of Winthrop's guilt beyond all reasonable doubt, he is entitled to an acquittal at your hands." It is objected that this instruction is erroneous under the doctrine announced in *People v. McNamara,* 94 Cal. 509, where it was held that this presumption rested with the defendant until the jury have arrived at a verdict. But the instruction in that case merely told the jury that the presumption remained "all through the case *until it is submitted to you,*" and there stopped. The jury were not told that they must keep that presumption in mind after their retirement for consideration. The present instruction is very different; it tells the jury expressly that the presumption "goes with you in your retirement to consider your verdict," and that the jury must "examine the evidence by the light of that presumption." We regard this language as stating the law as amply and correctly as any instruction on the question heretofore approved by this court.

8. We can see no error in the action of the court in refusing defendant's request for more time to prepare affidavits in support of his motion for a new trial. There was no adequate showing of necessity for any further time. The showing made did not indicate what the misconduct of the jury consisted in, or the name of any juror guilty of misconduct; nor did it state what the nature of the newly discovered evidence was which defendant desired to obtain, nor that there was any reasonable expectation that it could be obtained; nor why it could not have been produced at the trial. In fact, the showing was so wholly bald of essential character in several respects as to render any interference on our part with the discretionary judgment of the court below an abuse of power.

9. The punishment imposed is not in excess of the power of the court. Robbery is punishable by imprisonment in the state prison "not less than one year." (Pen. Code, sec. 213.) Defendant urges that it was the evident intent of the legislature that the punishment must be limited to a definite term of years. Such intent is expressly negatived by section 671 of the Penal Code, which in terms declares what effect is to be given to the provision found in section 213.

There are some other exceptions noted, but in a more or less perfunctory manner, without suggestion of the prejudicial character of the rulings, even if erroneous. They need not be noticed further than to say that they have all been examined, and we find in them no ground for reversal.

Judgment and order affirmed.

Garoutte, J., and Harrison, J., concurred.