[Crim. No. 94.   First Appellate District.—March 3, 1908.]

## THE PEOPLE, Respondent, v. BERNARD WHITELAW, Appellant.

CRIMINAL LAW—ROBBERY—EVIDENCE—CONSPIRACY—DECLARATIONS AND ACTS OF CONSPIRATORS.—Where the evidence abundantly connects the defendant appealing with the commission of the robbery charged, and shows a carefully planned conspiracy between him and other defendants jointly charged, to entice an adult daughter from the house of the woman robbed, and to commit the crime while others were absent therefrom, evidence was admissible to show a declaration by one of the defendants to the others three days before the robbery, as to knowledge that the woman had a large sum of money and some diamonds, that her husband was dead, and it would be easy to get, while the children were absent; and to show other declarations and acts of the conspirators pursuant to the conspiracy, until the crime was committed in the absence of all other persons from the house than the robbers and the woman robbed.

ID.—EVIDENCE OF FORCE—TESTIMONY OF PHYSICIAN—CORROBORATION OF PLAINTIFF.—The testimony of the physician who attended the prosecutrix after the robbery as to the injuries sustained by her was admissible in corroboration of her testimony as to the use of force and violence by the defendant and his associates when the robbery was committed, and brutal maltreatment of her person by them.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   Carroll Cook, Judge.

The facts are stated in the opinion of the court.

C. S. Farquar, and Wm. S. Barnes, for Appellant.

U. S. Webb, Attorney General, and R. C. Van Fleet, Deputy Attorney General, for Respondent.

HALL, J.—Defendant, Bernard Whitelaw, was jointly charged with Michael Nolan, John Davis and Docia Nolan with the crime of robbery, committed upon one Emma Mathews.

Upon the trial of the defendant Whitelaw he was convicted of the crime as charged, and this appeal is from the judgment and the order denying his motion for a new trial.

The only points relied on for a reversal concern certain rulings of the court in admitting certain evidence over the objections and exceptions of defendant, and are utterly without merit.

The salient facts of the case, as disclosed by the evidence, are as follows:

In the month of March, 1903, Mrs. Emma Mathews resided at 543 Haight street in the city and county of San Francisco, with her son, aged thirteen years, her daughter, Mrs. Ida Tuttle, and her daughter's daughter, aged twelve years.

A witness for the people, Ruby Grills, testified that she heard defendant Docia Nolan say to the other three defendants, in front of a restaurant, on the evening of March 1, 1903, "I know an old woman out here who has two or three thousand dollars and some diamonds. Her husband died a short time ago, and it would be easy to get, and the best time would be when the children are at school. The same witness also saw the three defendants, Whitelaw, Davis and Michael Nolan, together leave the premises, 413 O'Farrell street, where she and some at least of the defendants resided, on the forenoon of March 2, 1903.

Mrs. Ida Tuttle testified that on March 1, 1903, she resided with her mother, Mrs. Emma Mathews, her mother's little boy, and her own little girl, at 543 Haight street. That on the second day of March, 1903, she came down town about 11 o'clock to see Mr. Johnson, a real estate dealer, whose office was at Turk and Market streets, looked at a house in the Mission and visited other places, and started home between half-past 12 and 1 o'clock, taking Haight street car on Market street; while going out Market street she saw the defendant Whitelaw looking at her. He was standing on the rear platform of the car. She got off the car at Haight and Fillmore streets, passing said defendant on the platform in doing so, and went to her home. She had just taken off her hat when the door bell rang. She opened the door and found appellant at the door. He asked if Mrs. Tuttle was in, and she answered, "I am Mrs. Tuttle." He then informed her that he had a lodging-house to sell, gave the location, price, number of rooms, etc., and in-

formed her that he had been sent by Mr. Johnson. During this interview Mrs. Mathews also came into the room and saw appellant. Mrs. Mathews said to Mrs. Tuttle, "You don't want that house; you want a larger house," and Mrs. Tuttle told appellant to go back to Mr. Johnson and have him sell the house. Whereupon he left.

In the forenoon of March 4, 1903, appellant sent to Mrs. Ida Tuttle by a messenger boy a message written by him as follows:

"San Francisco, March 4th, 1903.

"Mrs. Tuttle, please be at house on N. E. corner Polk and Larkin street at one P. M., or as near that time as possible, to get first chance.          JOHNSON."

Shortly after receiving the message, Mrs. Tuttle left the house, at about 12:30 o'clock, and went to Mr. Johnson's office, thus leaving Mrs. Mathews alone, the little boy and girl having also left the house.

In about five minutes after Mrs. Tuttle left the house, appellant Davis and Michael Nolan appeared at the residence of Mrs. Mathews, and, on the door being opened by Mrs. Mathews, stepped into the hallway and informed her that they had been sent by "Johnson." They passed into the parlor, drew pistols, with which they threatened and struck her, demanded her money and diamonds, beat and maltreated her most brutally, and succeeded in getting away with sixty dollars in money and a watch. They escaped from the premises through the back door and yard.

The evidence connecting appellant with the crime is abundant, and the only points urged for a reversal, as we have before stated, concern the rulings of the court in admitting certain testimony. Appellant objected to the admission of the testimony given by Ruby Grills as to what she heard said by Docia Nolan to the other three defendants on the evening of March 1st, and also as to the fact that she saw the three male defendants together on the morning of March 2d.

Appellant also objected to the admission of the testimony given by Mrs. Tuttle as to where she was on March 1st, and as to the happenings of March 2d. The objection to this testimony seems to be that it was no part of the *res gestae,* and was too remote in point of time from the actual commission of the offense.

But it is perfectly apparent that every word of it that was in any way prejudicial to appellant tended to connect him with the commission of a deliberate and carefully planned robbery. It shows that the crime that was finally committed on the fourth day of March was probably conceived by the appellant and his fellow-defendants on March 1st, and more fully planned on March 2d by appellant. The testimony of Ruby Grills and Mrs. Tuttle as to what occurred on March 1st and 2d tended to support the manifest theory of the prosecution that the robbery was the consummation of a deliberate and previously concocted plan of defendant and his codefendants to entice Mrs. Tuttle away from her home, and then, while both she and the two children were away, to rob Mrs. Mathews and the house of such valuables as they could get. The admission of this testimony was clearly proper, and is fully supported by *People* v. *Winthrop,* 118 Cal. 85, [50 Pac. 390]. (See, also, *People* v. *Kelly,* 146 Cal. 119, [79 Pac. 846] , *People* v. *Linares,* 142 Cal. 18, [75 Pac. 308], *People* v. *Oldham,* 111 Cal. 648, [44 Pac. 312], and *State* v. *Ryan,* 47 Or. 338, 82 Pac. 703].)

It was likewise proper for the court to allow the physician who attended Mrs. Mathews for the injuries received at the hands of appellant and his codefendants to fully describe such injuries. It was corroborative of the evidence of Mrs. Mathews that force was used.

No other reason being suggested why the judgment or order should be reversed, both are affirmed.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 30, 1908.