### ERIE R. CO. v. HILT et al.

#### (Circuit Court of Appeals, Third Circuit. January 5, 1918.)

#### No. 2308.

1. NEGLIGENCE ⊚⇒136(19)—INJURIES TO CHILD—JURY QUESTION.

In an action for injuries received by a small boy, hurt when a car around which he was playing was moved without warning, the question of the negligence of the railroad company's servants *held*, under the evidence, for the jury.

2. NEGLIGENCE ⊚⇒136(29)—CONTRIBUTORY NEGLIGENCE OF CHILD—JURY QUESTION.

Despite 3 Comp. St. N. J. 1910, p. 4245, § 55, declaring that it shall not be lawful for any person other than those connected with or employed upon a railroad to walk along the tracks of any railroad, except when the same shall be laid upon a public highway, and that, if any person shall be injured by any railroad car while walking, standing, etc., upon any railroad, he shall be deemed to have contributed to his injury, the question whether a small boy seven years of age was guilty of contributory negligence in playing around and partly under box cars, so that he was injured when they were suddenly moved, *held*, under the evidence, for the jury.

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Edwin J. Hilt, Jr., and another, against the Erie Railroad Company. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

Collins & Corbin, of Jersey City, N. J. (George S. Hobart, of Jersey City, N. J., of counsel), for plaintiff in error.

Samuel Greenstone, of Jersey City, N. J. (Edwin F. Smith, of Jersey City, N. J., of counsel), for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. A branch of the defendant's railroad runs through the town of Garfield, N. J. On April 6, 1916, Edwin J. Hilt, Jr., one of the plaintiffs, a boy less than seven years old, was run over and severely hurt on a switch track or siding near the station, and this suit is brought by his father and himself to recover damages for the injury.

At the place of the accident, there are two main tracks and a siding; trains run toward Jersey City on the east-bound track, and south of this track is the siding, which runs westward to the station and is used for the receipt and delivery of freight. On the day in question, nine cars stood on the siding—first, five empty cars near its junction with the east-bound track; then, two loaded coal cars, separated from the empty cars by an open space of 15 or 20 feet; the remaining two being loaded box cars, standing near the station and separated from the coal cars by a space of similar width. Immediately south of the siding there was open ground, about 20 feet wide and more than 350 feet long. This was chiefly used as a driveway to the station and the siding, but for a good many years it had been also used as a playground by children, some of them very young, who were accustomed to play on the open ground, on the siding itself, and over and about the cars that might be standing on the rails. This was a frequent practice, and was well known to the servants of the railroad. Sometimes the children would be driven or ordered away, but this had little effect on the practice, as there was no barrier to keep them off.

On April 6 a train consisting of an engine and twenty cars was moving toward Jersey City on the east-bound track. It had been ordered to pick up the five empty cars, and, as the train neared the junction of the siding with the east-bound track, the rear brakeman alighted from a car toward the rear of the train for the purpose of setting the switch. He descended on the southerly side of the train, between the east-bound track and the siding, and crossed the siding through the space between the coal cars and the empty cars, thus reaching the driveway. He testified that he looked up and down both rails of the siding, but saw no one. Thereupon he ran east and turned the switch, the train meanwhile having moved east and stopped at a point where its rear end was about 50 feet beyond the switch. The brakeman then gave the signal to back, and ran west along the north rail of the siding to the place where the empty cars were to be coupled. As

246 F.—51

he ran he could see along the northerly side of the siding as far as its western end, but still saw no one. He ran as far as the middle of the empty cars, and waited to make the coupling. These movements required about six or seven minutes, and the engineer, obeying the signals, backed into the siding against the empty cars. When the train started to back, the conductor testified that he was on top of a car about the middle of the train, was facing west, and was watching the siding and the brakeman, but saw no one except the brakeman. The train was moving about 4 or 5 miles an hour, and stopped on the usual signal, and in the usual way; the coupling was made, but the momentum of the train pushed back the empty cars against the coal cars, and moved these seven cars a few feet further. The two loaded box cars were not disturbed.

The boy had been playing marbles near the siding with a companion of his own age, who was not called as a witness. A peddler, who was selling potatoes at a house in the neighborhood, saw the boys near the siding about five minutes before the accident, and told them to get away or they would be hurt; but he paid no further attention to the matter until he heard the coupling of cars and the cries of the injured boy just afterward, whereupon he hastened to the spot and found the boy lying on the ground close to the rail on the south side of the siding, and close to the train, which was then standing still. The boy testified that he had been playing marbles for an hour before the accident, and that a marble had rolled under one of the five empty cars and was lying toward the north rail of the siding. He tried to recover it by reaching under the car with his foot and pulling the marble toward him, but drew back quickly, because he thought the cars might be going to move. He tried a second time, however, and while he was thus engaged the train backed in, and his left leg was so badly injured that amputation was necessary. At the trial no question was raised about the duty of the train to give notice of its movements by bell or whistle; the plaintiffs' position was that the railroad's testimony, already referred to, could not be accepted, that the boy must have been visible, and that the brakeman was negligent in failing to see him and in failing to give him notice of the danger. Witnesses testified that both boys were seen at the spot immediately after the accident.

[1] On the question of the railroad's negligence, it is clear that the jury was the proper tribunal to decide which account was the most reliable, and what inferences should be drawn from the testimony after the facts were determined. Under the charge they must have found that the brakeman did not exercise reasonable care, and we think the conflicting evidence justified the court in submitting this question.

[2] Whether, considering his tender years, the boy was to be chargeable with contributory negligence as a matter of law, either as a general proposition or under section 55 of the New Jersey statute (3 Comp. Stat. p. 4245), is not an open question in this court. No decision of the highest court of the state requires us to hold that the District Court should have taken this question from the jury, and our own cases (Snare & Triest Co. v. Friedman, 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A. [N. S.] 367; Erie R. R. v. Swiderski, 197 Fed. 521, 117 C.

C. A. 17; Chesko v. Del. & Hud. Co., 218 Fed. 804, 134 C. C. A. 492) are to the contrary. The boy's contributory negligence was submitted to the jury as a question of fact, and this was all the defendant could properly ask. Upon this point there was pertinent testimony by the boy that he had never played on the siding or around the cars before, and had never been in the driveway or near the siding; that he had never seen cars going up and down the siding, and knew nothing about the movement of cars thereon; that on the day in question he saw no railroad men, no engine or train, and did not know that switching was being done, or that cars were to be moved. He testified that he knew he would be hurt if a car ran over him, and gave some other answers that were in the railroad's favor; but the whole subject was for the jury, and was submitted under proper instructions.

The father's contributory negligence was also submitted in language to which no exception was taken.

No other assignment of error seems to need consideration, and accordingly the judgment is

Affirmed.