[Crim. No. 2201. In Bank.—January 7, 1919.]

## THE PEOPLE, Respondent, v. JAMES TYREN, Appellant.

CRIMINAL LAW—JURY — LIMITATION OF EXAMINATION OF TALESMEN— NONEXHAUSTION OF PEREMPTORY CHALLENGES—APPEAL.—In a prosecution for murder the defendant cannot complain on appeal that the court erred in sustaining objections of the district attorney to various questions asked of talesmen on their examination on their *voir dire*, where the defendant exercised only thirteen of the twenty peremptory challenges allowed him by law, and objections were sus-

tained in the examination of but three of the talesmen who ultimately found places on the jury.

ID.—MURDER—INSANITY — EVIDENCE — CROSS-EXAMINATION OF DEFENDANT.—Where in the prosecution of the defendant for the murder of his adopted son the only defense sought to be made was that of insanity, and the defendant in his own behalf testified as to his mental condition on the day of the crime, it was proper cross-examination to question him concerning a notation which he made on the summons in a divorce action served upon him the day before the crime, which might be well interpreted as a declaration of a definite purpose and intent to kill his children.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial. Malcolm C. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mark L. Burns, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

SLOSS, J.—The defendant was convicted of murder of the first degree and sentenced to death. He appeals from the judgment and from an order denying his motion for a new trial.

The only defense sought to be made at the trial was that of insanity. No question is, or could be, made of the sufficiency of the evidence to establish the commission of the homicide by the defendant. It is conceded, as well, that the jury was warranted in finding against the plea of insanity. The appeal is rested upon the claim of error in the conduct of the trial. For a proper understanding of the points made, a brief outline of the facts may be given.

The defendant, Tyren, lived at Sacramento with his wife and two children, one a boy of about twelve years, who had been adopted in infancy by the Tyrens, the other a girl of seven years. The murder charged was that of the boy, Holland Tyren. The family had been living in a house on J Street, in Sacramento. Early in May, 1918, differences arose between Tyren and his wife, and the latter left the family home, taking the children with her. She instituted an action

for divorce, praying in her complaint for alimony, an award of community property, and the custody of the children. Summons in this action was served on the defendant on the 6th of May, 1918. On the following day, May 7th, the children, who were attending school, went to the home on J Street during the noon recess, and there had their midday meal with the defendant. They attended the afternoon session of school, which closed about 3 o'clock. They did not return to their mother's new abode, and in the evening of the same day, alarmed by their absence, she caused search for them to be made. Two police officers, together with her attorney, went to the defendant's house on J Street. They entered, made their way to a bathroom on the second floor, and there found the bathtub half filled with water strongly tinged with the color of blood. In an adjoining room, lying upon a bed, were the dead bodies of the two children, and kneeling by the side of the bed was the defendant, with a gash, apparently self-inflicted, in his throat. Testimony of physicians tended to show that the boy, Holland, had been strangled to death, and that his body had been immersed in the water of the tub while he was being strangled, or shortly thereafter.

The appellant's first contention is that the court erred in sustaining objections of the district attorney to various questions asked of talesmen on their examination on *voir dire*. Nearly all of these questions were improper, and if, in one or two instances, the ruling may have been somewhat strict, it must be held that the defendant was not prejudiced thereby. The defendant exercised only thirteen of the twenty peremptory challenges allowed him by law. Objections were sustained in the examination of but three of the talesmen who ultimately found places on the jury. The defendant had it in his power to remove from the box any or all of the three, if he had any doubt regarding their desirability as jurors. The ensuing situation was, therefore, the result of his own acquiescence, and he cannot complain of it. This is the settled rule where a challenge for cause has been erroneously overruled. (*People* v. *Durrant,* 116 Cal. 179, 196, [48 Pac. 75] ; *People* v. *Winthrop,* 118 Cal. 85, 88, [50 Pac. 390] ; *People* v. *Schafer,* 161 Cal. 573, 577, [119 Pac. 920].) And the reasons on which it is based apply equally to a case like the present, where it is claimed that the court erred in limiting the exam-

ination of talesmen.    (*People* v. *Freeman*, 92 Cal. 359, 365,
[28 Pac. 261].)

The appellant makes a number of assignments of error in
the admission or rejection of evidence.    Taken singly or col-
lectively they have little substantial merit.    The gravity of
the case requires, however, that those which are argued be
given brief notice.

One Gray was called by the defendant as a witness to sup-
port the plea of insanity.    He testified that the defendant,
Tyren, had been in his employ some ten years before the trial,
and that he had at that time complained of ailments.    He was
then asked: ''Q.  Well now, you may state what he complained
of,'' and to this question the court sustained an objection.
The ruling, if erroneous, was harmless.    In the first place,
the matter sought to be elicited was not excluded absolutely.
In making its ruling, the court directed counsel for the de-
fendant to take up one complaint at a time, and thus afforded
ample opportunity to go on with the inquiry.    Furthermore,
other questions were put, and in answer to them, the witness
did testify fully on the subject.    The same witness, after
testifying that on one occasion the defendant ''was nervous,
trembly, and kind of as if he was spitting a little from his
mouth,'' added, ''I thought he had an apoplectic fit.''    The
court ordered the last statement stricken out.    The ruling
was obviously correct.    The witness was not qualified to give
an opinion of the nature of Tyren's ailment.

The defendant undertook to show that he had always mani-
fested a deep affection for his children, and was allowed to
develop the point in considerable detail.    The appellant urges
that the court erred in sustaining objections to one or two
questions put to the witness Ford on this line.    The witness
was, however, permitted to describe Tyren's conduct and de-
meanor toward his children, his testimony being to the effect
that he appeared ''very affectionate towards the children.''
The defendant had the benefit of everything of substantial
importance that he desired to prove by this witness.

Objections to questions asked of defendant's witnesses,
Weaver and Barrett, were properly sustained on the ground
that the questions were leading and suggestive.    Further-
more, in the case of the latter witness, the subject was fully
covered by the answer to a question put after the ruling com-
plained of,

The court sustained an objection to defendant's offer in evidence of two photographs of himself, taken about a week after the homicide. It is claimed that they tended to support the appellant's claims regarding his mental condition. But this does not appear. The photographs are not incorporated in the record, and there is nothing before us to show that they had any relevancy whatever. Error must be shown affirmatively, and the action of the court below in rejecting evidence will be presumed to be correct, unless the record is made to show the character and the admissibility of such evidence. (4 C. J. 760; *Barrell* v. *Lake View Land Co.*, 122 Cal. 129, [54 Pac. 594]; *In re Angle,* 148 Cal. 102, [82 Pac. 668].)

Any error that may have been committed in excluding testimony of the defendant regarding the effect upon his mind of the war, and of the war pictures which he had seen displayed in theaters, was fully cured by the action of the court in permitting him to testify fully on this subject at a later stage.

The defendant took the stand as a witness in his own behalf. He testified at length regarding the relations between himself, his wife, and his children, and gave a full account of his actions upon the day of the homicide (May 7th) up to the return of the children to school in the afternoon. He had, so he declared, no memory or knowledge of anything that had occurred from the time the children left the house until he found himself in the hospital on the following day. On cross-examination he was asked to state whether he had written a certain indorsement on the summons which had been served upon him. The writing, which was subsequently admitted in evidence, was addressed to the defendant's wife. After declaring that the allegations of her complaint were false, it went on to say: "Now that I have worked so hard for what we have got and you want to take the children and everything in it is too much for me and I never was in court and I hope I never will be only before my God and you will suffer just as much as I by the time you see this I hope me and my boy and my little sunshine will be no more trouble to from yours James Tyren." (The defendant was in the habit of referring to his little daughter as "Sunshine.") It was not error to permit the defendant to be cross-examined on this subject. Where a defendant testifies in his own behalf, he may be cross-examined "as to all matters about which he was examined in chief." (Pen. Code, sec. 1323.) "The cross-

examination may extend to the whole transaction, of which he gives a part'' (*People* v. *Teshara,* 141 Cal. 633, [75 Pac. 338]), and may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by him on his direct examination. (*People* v. *Gallagher,* 100 Cal. 475, 476, [35 Pac. 80]; *People* v. *Buckley,* 143 Cal. 375, 388, 389, [77 Pac. 169]; *People* v. *Creeks,* 170 Cal. 368, 378, [149 Pac. 821].) The defendant's testimony regarding his mental condition on May 7th was designed to show that, if he had in fact killed the boy, his act had been committed without consciousness or volition on his part. But the notation on the summons might well be interpreted as a declaration by him of a definite purpose and intent to kill both children. The identification and introduction of the paper were directly connected with the matter concerning which the defendant had testified in chief.

Finally, the appellant complains of the action of the court in giving certain instructions and in refusing others. We see no error in any of the instructions given. The court charged the jury carefully and impartially regarding the rules of law governing the case. The subject of insanity was adequately and correctly covered. There is no merit in the claim that the court failed to make it clear that the question in this regard turned upon the state of the defendant's mind at the time of the alleged commission of the act charged. Taking the charge as a whole, the jury could not have been left in any uncertainty on this point. One of the instructions on the subject of insanity is more particularly criticised, the claim being made that the jury were directed to find the defendant guilty although they believed him to be insane. Without quoting the instruction in full, we may say that this contention is based upon a strained interpretation of the language. While the instruction may have been inartistically phrased, its purport plainly was that the defendant is to be found guilty only if the jury should conclude that he had not sustained the burden of proving insanity. The court gave an instruction with reference to irresistible impulse, and the point made is that no such defense was interposed in the case. But we cannot see that the giving of the instruction could have prejudiced the defendant in any way. The same observation may be made regarding the succeeding instruction, which dealt with partial insanity.

With respect to the instructions requested by the defendant and refused, it will suffice to say that, so far as they correctly stated the law, they were covered by the instructions given by the court of its own motion or at the request of the prosecution.

On the whole case, we see no ground for interfering with the judgment. The judge below conducted the proceedings with marked fairness and patience, and every substantial right of the defendant was accorded him.

The judgment and the order denying a new trial are affirmed.

Wilbur, J., Melvin, J., Richards, J., *pro tem.*, and Angellotti, C. J., concurred.