**CURRERI v. VICE, United States Marshal, et al.**

No. 7722.

Circuit Court of Appeals, Ninth Circuit.

May 2, 1935.

Hugh L. Smith, Charles J. Wiseman, and James F. Brennan, all of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and A. J. Zirpoli, Asst. U. S. Atty., both of San Francisco, Cal., for appellee Vice.

Leo A. Cunningham, of San Francisco, Cal., for appellee Fitzgerald.

Pillsbury, Madison & Sutro, Vincent Butler, Jr., and Harold I. Boucher, all of San Francisco, Cal., for British Consul General of San Francisco, Cal., amici curiæ.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

The appellant was indicted in the Province of Quebec in May, 1924, for two murders committed on April 1, 1924 during a highway robbery of bank messengers in the city of Montreal. On July 14, 1934, a complaint was filed before United States Commissioner for the Northern District of California requesting a warrant for the apprehension of the appellant for extradition. Appellant was arrested on that day and brought before the Commissioner, whereupon he entered a plea of not guilty. A hearing was subsequently had, and on September 19, 1934, he was ordered committed to the jail in San Francisco to await an extradition order of the Secretary of State of the United States. On September 20, 1934, he petitioned the District Court of the United States for the Northern District of California, Southern Division, for a writ of habeas corpus. An order to show cause was issued; after hearing the petition for the writ was denied and the proceeding dismissed. This appeal is from that order.

The appellant contends that the evidence adduced against him was insufficient to justify the order of commitment for extradition because his connection with the murders was established solely by the testimony of an accomplice who was not corroborated as to the participation of the appellant in the murders. The contention is based upon the terms of the applicable extradition treaty and upon section 1111 of the Penal Code of the state of California. Article 10 of the Webster-Ashburton Treaty, Aug. 9, 1842 (8 Stat. 572, 576), upon which appellant relies, after providing for extradition of one who is found within the territory of the other contracting power, for the crime of murder, provides: "That this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed. * * *"

The Penal Code of California requires that upon preliminary examination of the defendant with a view of ascertaining whether or not he shall be held to answer to the superior court for a felony he shall be so held if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof." Cal. P. C. §§ 871, 872.

Apparently "sufficient cause" is the statutory equivalent of "reasonable or probable cause," for the Penal Code of California, § 1487, subd. 7, provides that, "where a party has been committed on a criminal charge without reasonable or probable cause," he should be released on writ of habeas corpus. It has been held by the California courts that the phrase "reasonable or probable cause," used in section 1487, subd. 7, P. C., supra, means such a state of facts as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion that the person accused is guilty. There must be a probability that a crime has been committed by the person named in the commitment. In re Mesquita, 139 Cal. App. 91, 33 P.(2d) 459, citing Ex parte Vice, 5 Cal. App. 153, 89 P. 983, 985.

Appellant argues that, in order to establish this degree of proof necessary to hold a defendant to answer for the crime of murder in the courts of California, the evidence must be competent, and contends that the evidence of an accomplice is incompetent for that purpose. It is clear, however, that the evidence of an accomplice is competent evidence under the law of California. The requirement that his testimony shall be corroborated necessarily implies that it is competent and merely goes

to the sufficiency or weight of the evidence standing alone to convict.

Counsel's further argument proceeds on the theory that the evidence of the accomplice being incompetent, such evidence cannot make out a prima facie case because, as defined by the Code of Civil Procedure of California, "prima facie evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence." Cal. Code Civ. Proc. § 1833. Appellant adds, "in all cases, civil or criminal, it has been said that a prima facie case is one which will support a judgment unless other evidence is introduced, and further, a state of facts which entitles the state to have the case go to the jury." He also cites Charlton v. Kelly, 229 U. S. 447, 33 S. Ct. 945, 949, 57 L. Ed. 1274, 46 L. R. A. (N. S.) 397, wherein the Supreme Court, in dealing with an extradition matter, said: "The proceeding is not a trial. The issue is confined to the single question of whether the evidence for the state makes a prima facie case of guilt sufficient to make it proper to hold the party for trial."

In reply to this argument, it is sufficient to say that the statutory law of California, which is controlling here, with reference to the holding of persons for trial by a committing magistrate, does not require in terms that there should be a prima facie showing of guilt, but requires a person to be held if there is "sufficient cause to believe" him guilty. It is clear that the testimony of an accomplice is, next to the confession of the defendant, the most satisfactory kind of evidence that can be produced as to the guilt of the defendant. The doubt in such a case is as to the veracity of the witness. In the federal courts the weight of the testimony of the accomplice is left to the jury, but in some states, like California, such evidence, without other evidence connecting the defendant with the offense, is insufficient for conviction; that is to say, in the opinion of the Legislature it is insufficient to establish the guilt of the defendant beyond a reasonable doubt. We are not without authority in California as to the distinction between evidence which is sufficient to support an order committing the defendant for trial and evidence which is sufficient to sustain a conviction of a crime. In People v. Cokahnour, 120 Cal. 253, 52 P. 505, no evidence was introduced before the committing magistrate other than the confession of the defendant. This evidence, under the law of California, was in-sufficient to sustain a conviction and required corroboration as to the corpus delicti. 8 Cal. Juris., p. 118, § 207 Cal. Jur.; People v. Ford, 25 Cal. App. 388, 143 P. 1075. Yet the California Supreme Court said: "This was competent and sufficient evidence upon which to hold him to answer." This decision was relied upon by the Appellate Court of the Second Appellate District of California in Re Alexis M. Schwitalla, 36 Cal. App. 511, 172 P. 617, 618, wherein the court held as follows: "While a defendant cannot be convicted upon the uncorroborated testimony of an accomplice, the testimony of an accomplice is admissible and is proper to be considered, and we think is sufficient to make it appear that there is a 'probability' that a defendant has been guilty of the offense charged against him."

The appellant urges upon us that the statement of the California Appellate Court in Re Schwitalla, supra, was dictum, because the court also held that there was evidence to corroborate the accomplice in that case. The fact that the court based its conclusion in part upon the additional ground that there was slight corroboration does not detract from the force of the decision upon the other point which was equally involved. Pugh v. Moxley, 164 Cal. 374, 128 P. 1037; King v. Pauly, 159 Cal. 549, 115 P. 210, Ann. Cas. 1912C, 1244; 7 Cal. Jur. p. 639, § 45.

In Ex parte Glaser, 176 F. 702, 704, the Circuit Court of Appeals of the Second Circuit, in construing a provision of an extradition treaty between the United States and Prussia (Treaty 1852, art. 1), similar in terms to that of the treaty with Great Britain involved herein and the relation thereto of the law of New York, which, like the law of California, required corroboration of an accomplice for conviction, held as follows: "It is only necessary to present such evidence as would justify a committing magistrate in holding the accused by imprisonment or under bail to await subsequent proceedings. The provisions of the New York Code that conviction cannot be had on the uncorroborated testimony of an accomplice have no application."

If we follow the decision of the California District Court of Appeal in Re Alexis M. Schwitalla, supra, we must affirm. If we regard the question as open in California, we must still affirm if we follow the decision of the Circuit Court of

Appeals of the Second Circuit in Ex parte Glaser, 176 F. 702, supra. We think these decisions are right. Moreover, there is evidence that the defendant was apprehended in Montreal, Canada, for this crime shortly after its commission; that he was released for want of sufficient evidence to hold him, and that shortly thereafter he left Canada and came to California where he assumed a fictitious name. This evidence was competent to corroborate the testimony of the accomplice as to the participation of the defendant in the crime charged. As to flight, see Strom v. United States (C. C. A.) 50 F.(2d) 547; Greene v. United States (C. C. A.) 154 F. 401; Rowan v. United States (C. C. A.) 277 F. 777, 25 A. L. R. 876; Kanner v. United States (C. C. A.) 34 F.(2d) 863; as to use of assumed name, see Lutch v. United States (C. C. A.) 73 F.(2d) 840; 2 Jones on Evidence (1st Ed.) p. 575, § 287; Underhill on Evidence (3d Ed.) p. 1019, § 1038; (3d Ed.) § 201; People v. Cox, 29 Cal. App. 419, 155 P. 1010; People v. Winthrop, 118 Cal. 85, 50 P. 390.

The question of whether or not we are bound to follow the decision of an intermediate appellate court, such as the District Court of Appeal of California, interpreting the statutory law of the state, is a matter upon which there has been some difference of opinion. See opinion by Circuit Judge Hand, Irving Nat. Bank v. Law, 9 F.(2d) 536, In re Gilligan, 152 F. 605, John T. Porter Co. v. Java Cocoanut Oil Co., 4 F.(2d) 476, by this court. The Supreme Court in Erie R. Co. v. Hilt, 247 U. S. 97, 38 S. Ct. 435, 436, 62 L. Ed. 1003, said: "In view of the importance of that tribunal [Supreme Court] in New Jersey, although not the highest Court in the State, we see no reason why it should not be followed by the Courts of the United States, even if we thought its decision more doubtful than we do."

Upon this ground the Supreme Court reversed a decision of the Circuit Court of Appeals of the Third Circuit (246 F. 800) which, in dealing with a case arising in New Jersey had declined to follow the decisions of the Supreme Court of New Jersey. See, also, Ex parte Zwillman (C. C. A.) 48 F.(2d) 76, 78. It is unnecessary for us to determine whether or not we are bound to follow the decision of the California District Court of Appeal in Re Schwitalla, supra, for we think the decision is right. It is in accord with the decision of the Cir-

cuit Court of Appeals of the Second Circuit, with which we also agree. It is true that these decisions are not in accord with the decision of the Supreme Court of Nevada in Re Oxley, 38 Nev. 379, 149 P. 992, which in turn relied upon the decision of State v. Smith, 138 Ala. 111, 35 So. 42, 100 Am. St. Rep. 26, by the Supreme Court of Alabama.

Affirmed.

DENMAN, Circuit Judge (concurring).

This case involves a question of the construction of a United States statute, R. S. § 5270 (18 USCA § 651), controlling the consideration of evidence by a United States Commissioner entertaining an application for extradition under the Webster-Ashburton Treaty of 1842. The statute is paramount to all the prior existing treaties. Charlton v. Kelly, 229 U. S. 447, 463, 33 S. Ct. 945, 57 L. Ed. 1274, 46 L. R. A. (N. S.) 397; Grin v. Shine, 187 U. S. 181, 191, 23 S. Ct. 98, 47 L. Ed. 130. The section to be construed is, "If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify," etc.

The question is whether the words "under the provisions of the proper treaty" refer to the provisions in the instant treaty making "murder" extraditable, in which event "evidence sufficient to sustain the charge" of murder would be required, or whether the word "provisions" refers to the portion of the treaty which provides for extradition "upon such evidence of criminality as" (in California in this case) "would justify his apprehension and commitment for trial." That is to say, shall there be a prima facie case of murder as suggested, but not held, in Charlton v. Kelly, 229 U. S. 447, 461, 33 S. Ct. 945, 57 L. Ed. 1274, 46 L. R. A. (N. S.) 397, or is it sufficient to show probable cause?

It is obvious that there is here a clear ambiguity, and if the statute were an ordinary criminal enactment this ambiguity would have to be resolved in favor of the accused. In that event, the evidence would have to be sufficient to sustain the charge of murder. Under the laws of California, such a charge could not be sustained on the mere testimony of an accomplice. Cal. P. C. § 1111; People v. Coffey, 161 Cal. 433, 119 P. 901, 39 L. R. A. (N. S.) 704.

The treaties themselves, even those involving criminal extradition, are to be liberally interpreted in favor of the demand-

ing party to the treaty. Factor v. Laubenheimer, 290 U. S. 276, 293, 54 S. Ct. 191, 78 L. Ed. 315. It would seem that the statute which simply implements the treaty should receive the same interpretation in favor of the demanding government. It therefore follows that in states requiring only probable cause as a condition of apprehension and commitment, nothing beyond such showing of probable cause is required by R. S. § 5270 (18 USCA § 651).

The question here seems to be foreclosed by the decision of the Supreme Court in the case of McNamara v. Henkel, 226 U. S. 520, 523, 33 S. Ct. 146, 57 L. Ed. 330, followed in Collins v. Loisel, 259 U. S. 309, 315, 42 S. Ct. 469, 66 L. Ed. 956. There the treaty under consideration was the Webster-Ashburton Treaty as affected by the provisions of R. S. § 5270. The proceedings sought to have the accused removed from New York to British Columbia. Mr. Justice Hughes' opinion states:

" * * * Examination was demanded, and after hearing the evidence submitted on both sides, the United States commissioner found probable cause and issued an order of commitment for extradition. * * *

"The question simply is whether there was any competent evidence before the commissioner entitling him to act under the statute. The weight of the evidence was for his determination. The statute provides that if, on the hearing, 'he deems the evidence sufficient to sustain the charge,' he shall certify the same to the Secretary of the State, and issue his warrant for the commitment of the accused pending surrender according to the stipulations of the treaty. Rev. Stat. § 5270."

The facts proved as to probable cause for apprehending the accused on a charge of burglary were that he was cranking the car shortly after the burglary, in the vicinity of the garage which had been broken and entered. The criterion governing was, not that this was sufficient for conviction, but that it "tended to show guilty participation." His language is: "The evidence pointed to the appellant as one having control of the car and engaged in the endeavor to secure the fruits of the burglarious entry. Possession in these circumstances tended to show guilty participation in the burglary."

It is elementary that evidence may tend to show guilt, which evidence, without more, will not sustain a conviction.

It would therefore appear that the Supreme Court interprets the words "evidence sufficient to sustain the charge" as not requiring the proof of a prima facie case of guilt. It is enough to show probable cause by acts tending to show guilty participation. California does not require for commitment that a prima facie case of guilt be made out, but merely facts tending to show participation. In re Lottie McCarty, 140 Cal. App. 473, 35 P.(2d) 568; Ex parte Heacock, 8 Cal. App. 420, 97 P. 77.

The testimony of an accomplice is enough for commitment, In re Schwitalla, 36 Cal. App. 511, 172 P. 617, as is also a confession, upon which evidence alone a conviction cannot rest. People v. Cokahnour, 120 Cal. 253, 52 P. 505. At the trial proper the evidence is properly admissible as tending to show guilt, though insufficient in itself to sustain a verdict. " * * * The objection that a witness was an accomplice does not go to the admissibility, but only to the effect, of his evidence." People v. Grundell, 75 Cal. 301, 305, 17 P. 214, 217; People v. Clough, 73 Cal. 348, 353, 15 P. 5; People v. Barnnovich, 16 Cal. App. 427, 430, 117 P. 572. In the case of In re Oxley, 38 Nev. 379, 149 P. 992, 994, which held such evidence would not establish probable cause, the court failed to consider the decisions of the California Supreme Court holding it admissible as tending to show guilt; nor the decision of that court in the Cokahnour Case, holding a confession sufficient evidence of probable cause.

The controlling question, whether the R. S. § 5270 (18 USCA § 651) has added to the California law, which demands only a showing of probable cause, the showing of a prima facie case, must be answered in the negative and the

Order sustained.