[No. D005956. Fourth Dist., Div. One. Aug. 12, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY MORALES, JR., Defendant and Appellant.

**COUNSEL**

David H. Askey, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Janelle B. Davis and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODWORTH, J.*** —Henry Morales, Jr., was convicted of burglary (Pen. Code,[1] § 459) by a jury verdict. He appeals, contending his constitutional right to a fair and impartial jury was infringed by the trial court's imposition of unreasonable time limits upon voir dire. We find nothing wrong with the procedure followed by the trial court: it acted well within the reasonable bounds of discretion.

### FACTUAL AND PROCEDURAL BACKGROUND

In an information filed September 18, 1986, Morales was charged with one count of residential burglary (§ 459) and a special enhancing allegation (§ 667.5, subd. (b)) that within the past five years he had served a prison term for receiving stolen property (§ 496.1). On Monday, December 1, 1986, jury selection began for Morales's trial. The court was using the "six-pack" method of jury selection under which 17 names were drawn initially and subjected to voir dire by court and counsel.[2] One was excused by stipulation. Early Tuesday morning December 2, the examination of this first group was completed; the People thereupon exercised three peremptories, and Morales two peremptories, reducing the number in the jury box to eleven. A group of six names was then drawn (hence "six-pack", and voir dire of that group continued until mid-afternoon. One of this group was excused by stipulation; Morales then exercised four peremptories and the People one peremptory, again reducing the number in the jury box to eleven.

At 3:11 p.m. on December 2, the court told counsel the only way to control the jury selection process after *People* v. *Williams* (1981) 29 Cal.3d 392 [174 Cal.Rptr. 317, 628 P.2d 869] was to set a time limit on counsel's voir dire, and thereupon imposed a 30-minute limit on each counsel to question the next group of 6 prospective jurors. The court stated, "I don't care how you divide your time or what you do, or what you ask, but at the end of a half hour we'll get the shepherd [hook] out, pull you off center stage and you will sit down because you will be through. [¶] . . . So, when we come back *you* will have a half hour, *you* will have a half hour. . . .

---

* Assigned by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code.

[2] For a euphoric introduction to the "six-pack" method, see Schneider, *The "Six-Pack" Method: A Way to Speed Jury Selection* (Apr. 22, 1983) Los Angeles Daily Journal, volume 96, number 4, page 4.

For a survey of several methods of jury selection, see Sipes, *On Trial: The Length of Civil and Criminal Trials* (1988) National Center for State Courts, Jury Selection, page 40 et seq.

Think it over. I want you to have time during the recess to maybe modify your voir dire, . . ." (Italics supplied.)

After the recess defense counsel questioned the next six prospective jurors, but left himself only two minutes of his allotted time to question the last juror, McOsker. Defense counsel then passed these six for cause.

The next morning, December 3, defense counsel told the court "the time limits that were imposed late in the [previous] afternoon resulted in [defense counsel] not being able to really get any information which [he] felt would enable [him] to follow *Williams* case and make an informed determination as to the jurors. . . ." Defense counsel said he might have three challenges *for cause* against Aguilar, Cavado, and McOsker and explained his concerns regarding each of these three panel members. He did challenge Aguilar for cause at that point and the challenge was later denied. As to Cavado and McOsker, he requested additional time to question them so that he might be "satisfied with their qualifications." He suggested no specific questions that he desired to ask.

The court declined to extend the 30-minute time limit but did give counsel leave to restate his challenges for cause at the close of the prosecutor's questioning. Cavado and McOsker were again challenged for cause and the court denied the challenge.

Defense counsel then exercised his seventh and eighth peremptories, eliminating Aguilar (one of the three jurors in question) and also another juror. Cavado was one of the twelve jurors accepted by both counsel. McOsker was one of two alternates accepted by both counsel after two other panel members were examined as prospective alternates. In sum, the prosecution exercised six peremptory challenges and Morales eight peremptory challenges out of the ten allowed by law (§ 1070). No peremptory challenges were exercised as to the alternate jurors, although each side was entitled to two by law. (§ 1089.) McOsker became a regular juror during the course of the trial when another juror had to be excused.

Morales was found guilty by a jury that included two jurors whom defense counsel had unsuccessfully challenged for cause.

DISCUSSION

I

*The Time Limit Imposed by the Court on Voir Dire Examination Was Not Unreasonable*

It was mid-afternoon of the second full day of jury selection when the court imposed a 30-minute time limit on each counsel for examining the next group of 6 potential jurors. Twenty-three members of the panel had been examined at great length. Defense counsel had been given extraordinary leeway to ask what prospective jurors thought when he displayed a picture of former Chief Justice Rose Bird; how they reacted to a newspaper cartoon that he displayed; what they thought about a recent notorious criminal trial; how they felt about tattoos. The trial court sensed that the panel was getting bored and restive. The entire panel, including the next group of six prospective jurors, had apparently been listening to all questions and answers.

The court called a recess during which counsel might prepare for further questioning. Defense counsel then did examine each of the six members of the group, but apparently misjudged his time and allowed himself only two minutes to question the sixth one, McOsker. He then passed for cause as to the group of six.

The next morning defense counsel asked leave to reopen challenges for cause and to further question three members of the group. Even then, however, he did not articulate any particular subjects he wanted to explore, or any specific questions to be asked.

■ In the landmark case of *People* v. *Williams, supra,* 29 Cal.3d at page 408, the California Supreme Court explicitly stated: "[T]rial courts need not and should not permit . . . inordinately extensive and unfocused questioning" and reaffirmed that it is not " 'a function of the examination of prospective jurors to educate the jury panel to the particular facts of the case, . . . to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law.' (*Rousseau* v. *West Coast House Movers* [1967] 256 Cal.App.2d 878, 882 [64 Cal.Rptr. 655].) [Fn. omitted.]" ■ There is no showing in the present record that defense counsel was deprived of the opportunity to ask any question that he might reasonably have been entitled to ask.

This case is not at all within the scope of the caveat voiced by the court in *People* v. *Hernandez* (1979) 94 Cal.App.3d 715, 719 [156 Cal.Rptr. 572]. In

that case the trial judge allowed each counsel 30 minutes to examine the first 12 prospective jurors (i.e., 2½ minutes per juror), and defense counsel actually examined only 9 of the 12 within his allotted time. The court properly observed "the fixing of an arbitrary time limit for voir dire *in advance of trial* is dangerous and could lead to a reversal on appeal." (*Ibid.*, italics supplied.) The present case is clearly distinguishable in that both the trial judge and the entire jury panel had the benefit of hearing one and one-half days of unfettered questioning to apprise them of the scope of counsel's examination; counsel indeed examined every single prospective juror; and counsel did not suggest any particular area of further questioning that he would like to pursue.

Under these circumstances, the trial court acted well within its discretion in imposing a reasonable time limit on voir dire examination.

## II

*Morales's Failure to Exercise Available Peremptory Challenges Constitutes a Waiver of His Right to Complain on Appeal About Restricted Voir Dire Examination*

■ Even assuming, for the sake of discussion, that voir dire examination were erroneously restricted, a defendant cannot show that he is aggrieved by the error unless he has exercised all of the peremptory challenges available to him. (*People* v. *Tyren* (1919) 179 Cal. 575, 577 [178 P. 132]; *People* v. *Hernandez, supra,* 94 Cal.App.3d at p. 719.)

Morales contends that his voir dire examination was restricted as to three members of the final group of six prospective jurors: Aguilar, Cavado, and McOsker. Aguilar was excused by the exercise of Morales's seventh peremptory challenge. Cavado was seated as a regular juror, even though Morales had two remaining unused challenges. McOsker was seated as one of two alternates when Morales did not choose to utilize either of the two additional peremptory challenges available to him at that point. Clearly Morales could have gotten rid of the two objectionable veniremen had he wished to do so.

Since Morales failed to take advantage of his available challenges, he has no standing to raise this issue on appeal.

## CONCLUSION

Voir dire examination was not unreasonably restricted. Moreover, Morales must be deemed to have waived his right to complain on appeal, since he did not use the peremptory challenges that were available to him.

## DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied September 1, 1988, and appellant's petition for review by the Supreme Court was denied November 17, 1988.